AMOS WETHERBEE, appellant,

v.

EDWARD P. BAKER et al., respondents.

| 35 | 501 |
|----|-----|
| 46 | 536 |
| 35 | 501 |
| 50 | 361 |
| 35 | 501 |
| 56L | 393 |
| 35 | 501 |
| 53 | 575 |
| 35 | 501 |
| 55 | 50 |
| 55 | 244 |
| 35 | 501 |
| 57 | 899 |
| 35 | 501 |
| 56 | 528 |
| 56 | 533 |
| 35 | 501 |
| 61 | 460 |
| 61 | 461 |
| 62 | 731 |
| 35 | 501 |
| 65 | 270 |
| 65 | 279 |

1. Subscriptions to capital stock are a trust fund for the payment of the debts of the corporation. The trust is created for the benefit of creditors as a class. All the creditors of the corporation have a common interest in this fund, and are entitled to share in it ratably.

2. A creditor, having exhausted his remedy against the corporation by judgment, execution and a return of *nulla bona,* may file a bill against stockholders to compel the payment of unpaid subscriptions to the capital stock.

3. The fifth section of the act concerning corporations (*Rev. p. 178*) provides that " where the whole capital of a corporation shall not have been paid in, and the capital paid shall be insufficient to satisfy the claims of its creditors, each stockholder shall be bound to pay on each share held by him the sum necessary to complete the amount of such share, as fixed by the charter of the company, or such proportion of that sum as shall be required to satisfy the debts of the company."

4. In a suit by a judgment creditor against stockholders of a corporation to compel payment of their unpaid subscriptions to the capital stock—*Held,*

(1) That such a suit can only be prosecuted by a creditor suing in behalf of all the creditors of the corporation.

(2) That the corporation is a necessary party to the suit.

(3) That all the property and assets of the corporation must be brought into the suit and put in the course of administration.

5. Entries in the books of a corporation are, as a general rule, competent evidence of the proceedings of the corporation, and of the acts and votes of its officers transacted at official meetings; but such entries are not notice to third persons of acts or resolutions entered on its minutes, so as to raise up against them an equitable estoppel arising from a consent to the proceedings.

6. The capital stock subscribed is a substitute for the personal liability of partners in ordinary copartnerships, and creditors are entitled to a *bona fide* exercise of the compulsory powers of the corporation to compel subscribers to pay in their subscriptions.

7. The officers of a corporation are the trustees of the subscriptions to its stock, and hold them as a trust fund for creditors; and the trust cannot be defeated by any simulated payment of the stock subscriptions, or by any device short of actual payment in good faith.

8. Transactions under statutes authorizing corporations to purchase prop-

Wetherbee *v.* Baker.

erty and issue stock in payment for it, or to accept property in payment of subscriptions to the capital stock, are upheld only where the agreement to purchase property and pay for it in stock has been made in good faith, and the property taken in payment of stock subscriptions has been put in at a fair *bona fide* valuation.

9. Courts have inflexibly enforced the rule that payment of stock subscriptions is good as against creditors, only where payment has been made in money, or what may fairly be considered as money's worth.

10. The third section of the land improvement act (*Rev. p. 568*) enacts that payment of the capital stock of corporations organized under the act, shall be made either in money or in land—the land to be appraised by the board of directors and taken at such value.—*Held,*

(1) That this section does not supersede the obligation of subscribers to pay their subscriptions, as they appear in the certificate of organization—it simply provides the manner in which payment shall be made; and in a suit by creditors against a stockholder, to compel him to pay his subscription, the inquiry is, has he paid in money or money's worth?

(2) That the directors, in the appraisement of land taken in payment of subscriptions, act in a fiduciary capacity, and are bound to discharge the duties of the trust with fidelity.

11. Five persons agreed for the purchase of a tract of land, and organized themselves into a corporation, under the land improvement act. In the certificate of incorporation the capital was fixed at $100,000, and these persons subscribed for all the capital stock, and became the directors of the company. The consideration of the purchase was $50,000; the deed was made directly to the corporation, and it gave its obligations for the whole purchase-money. The directors then appraised the lands at $100,000, and credited $50,000 of that valuation as a payment of fifty per cent. on the subscriptions to the capital stock. The lands were not worth more than the original purchase-money, and the company acquired no other property, real or personal. In a suit brought by a creditor of the corporation against the subscribers to the capital stock, to compel them to pay their subscriptions, in order to satisfy debts of the corporation—*Held,* that as against creditors of the corporation the allowance of a credit of fifty per cent. on the subscriptions of the stockholders was invalid, and that the stockholders were liable for the whole amount of their subscriptions to the capital stock, as they appeared in the certificate of organization.

On appeal from the decree of the chancellor, reported in *Wetherbee* v. *Baker, 5 Stew. Eq. 537.*

*Mr. W. C. Spencer,* for complainant.

*Mr. J. H. Stone* and *Mr. J. D. Bedle,* for defendants.

Wetherbee v. Baker.

The opinion of the court was delivered by

Depue, J.

The defendants, Edward P. Baker, Samuel Carpenter, George W. Barker, Charles F. Braune and George D. Howell, were subscribers to the stock of the Linden Land and Improvement Company, a corporation organized under "An act to encourage the improvement of real property in this state." *Rev. p. 567.* The certificate of organization is dated on the 20th of February, 1875. It was acknowledged by Baker, Carpenter and Braune on the 20th of February, 1875, by Howell on the 23d, by Barker on the 24th, and recorded in the clerk's office of the county of Union, February 24th, 1875.

In the certificate of incorporation the capital stock of the company was fixed at $100,000, divided into shares of $50 each, and each of the defendants subscribed for four hundred shares.

The company purchased of Wetherbee, the complainant, for the consideration of $50,000, a tract of thirty-seven acres, which was conveyed to the company by Wetherbee by a deed bearing date on the 3d and acknowledged on the 5th of March, 1875. The premises were, at that time, subject to a mortgage given to Anna C. Stiles, for $10,000. In the conveyance by Wetherbee to the company, the latter assumed the payment of the Stiles mortgage. For the balance of the consideration, $40,000, the company gave three bonds—one for $25,000, to Wetherbee, and two for $10,000 and $5,000, respectively, to Franklin Post. To secure Wetherbee's bond the company gave him a mortgage on the premises conveyed. It also gave two separate mortgages to Post, on the same premises, to secure the payment to him of his two bonds. The mortgages of Wetherbee and Post bear date on the same day, and were recorded at the same time, and it was provided that they should be concurrent liens.

By the company's by-laws the capital stock was payable, one-half on or before the 1st day of April, 1875, and the balance at the call of the directors. Nothing has been paid on account of the stock; but, by a resolution of the board of

directors, adopted on the 25th of February, 1875, the said tract of land was taken and put in, at an appraised valuation of $100,000, and $50,000 was credited as a payment on account of the capital stock mentioned in the certificate of incorporation.

Nothing has been paid on account of the mortgage indebtedness. The Stiles mortgage was foreclosed, and a decree of foreclosure taken January 20th, 1877, on which a *fi. fa.* was issued, but no sale has hitherto been effected. Wetherbee sued on his bond and recovered a judgment against the company for $28,245.72, on which execution was issued and returned *nulla bona.*

In this situation of affairs, Wetherbee filed his bill of complaint against the defendants as subscribers to the capital stock of the company. In his bill he prays that the defendants may be decreed to pay, on each share of the capital stock, the full amount of the par value thereof, to wit, the sum of $50 per share for each and every share, and that out of the same his debt may be decreed to be paid and satisfied.

Answers were filed by three of the defendants—Carpenter, Braune and Barker.

On final hearing the chancellor made a decree in favor of the complainant, in accordance with the prayer of the bill, but allowed the land to stand as an equivalent for fifty per cent. of the capital stock, leaving only a balance of fifty per cent. due and unpaid on the defendants' subscription to the capital stock.

From this decree the complainant, and also Carpenter, Braune and the executors of Barker, have appealed.

The defendants contend that the complainant's suit is defective in the frame of the bill, and also on account of the absence of necessary parties. They insist that such a suit as the complainant is prosecuting can only be brought by a creditor suing in behalf of all the creditors of the corporation; that to such a suit the corporation is a necessary party, and that all the property of the corporation must, by the bill, be put in the course of administration.

The complainant's bill derives its support exclusively from the fifth section of the act concerning corporations. *Rev. p. 178.*

Sections 93 and 94 of that act have no relevancy to such a suit. They were in the revision transferred to the general corporation act from the act for the establishment of companies for manufacturing and other purposes. *Nix. Dig. p. 538* §§ *31, 32.* These sections relate to cases where officers, directors or stockholders are made liable by the provisions of the act, specifically, for the payment of the debts of the company, or any part thereof, and provide in such cases for actions by any person to whom they are so liable. *Rev. p. 194. Waters* v. *Quimby, 3 Dutch. 296, 4 Id. 533,* is a precedent of a suit of this kind. Nowhere in the act does the non-payment of stock subscribed for make delinquent stockholders liable for the company's debts, except as is contained in the fifth section.

The fifth section provides that where the whole capital of a corporation shall not have been paid in, and the capital paid shall be insufficient to satisfy the claims of its creditors, each stockholder shall be bound to pay, on each share held by him, the sum necessary to complete the amount of such share, as fixed by the charter of the company, or such proportion of that sum as shall be required to satisfy the debts of the company.

The word "capital," as used with respect to corporations, primarily signifies the aggregate of the sums subscribed for, and either paid in or agreed to be paid in by the stockholders. *Boone on Corp.* § *105.* It is also in general use as signifying the sums paid in by the subscribers, with the addition of all gains or profits realized, with such diminutions as have resulted from losses incurred in transacting business. Comstock, C. J., in *People* v. *Comrs., 23 N. Y. 192, 219.* In this latter sense the capital of a corporation is the fund with which it transacts its business, and embraces all its property, real and personal, constituting the assets of the corporation, such as are subject to executions at law. *New Haven* v. *City Bank, 31 Conn. 106; Thomp. on Stockholders* §§ *11, 12.* The words "capital stock," when aptly used, describe the interest of the stockholders in the corporation. Upon this distinction between the capital of a corporation, which is its property, and the capital stock, which represents the interest of stockholders in the cor-

poration, and is their property, the power of the states to sub-
ject the shares of national banking associations to taxation,
is vindicated. *Van Allen* v. *The Assessors, 3 Wall. 573–584;
People* v. *Commans, 4 Id. 244.*

In the fifth section of the act concerning corporations the
word " capital " is used in the twofold sense above indicated. It
provides that when the capital paid in—meaning the capital paid
in as increased by profits or diminished by losses, *i. e.,* the prop-
erty of the corporation—shall be insufficient to satisfy the claims
of its creditors, and the whole capital—meaning the capital sub-
scribed and agreed to be paid in—has not been paid in, then
each stockholder shall be bound to pay on each share held by
him the sum necessary to complete the amount of such share as
fixed by the charter, or such proportion of that sum as shall be
necessary to satisfy the debts of the company. The stockholders
are made liable for unpaid subscriptions, upon the call of credi-
tors, only where the property of the corporation is insufficient
for the payment of its debts. A creditor of the corporation can-
not file a bill to call in moneys due from a stockholder on his
stock, until he has exhausted his remedy against the corporation
by judgment, execution, and return of *nulla bona. Thomp. on
Stockholders* §§ *265–320.* Each stockholder is made liable on his
unpaid subscription only for the proportion thereof which may
be necessary for the payment of the debts of the corporation,
when the property of the corporation has proved insufficient for
that purpose. Under these circumstances, the sum of the unpaid
subscriptions to the capital stock is a trust fund for the payment
of the debts of the corporation. *Sawyer* v. *Hoag, 17 Wall.
610; Sanger* v. *Upton, 91 U. S. 56; Wood* v. *Dummer, 3 Mason
308; Adler* v. *Milwaukee Brick Co., 13 Wis. 57; Thomp. on
Stockholders* § *10.*

It is manifest from a consideration of the circumstances under
which delinquent stockholders are liable to creditors for their
unpaid subscriptions, and of the nature of the trust which is
created, that, in any proceeding to enforce the liability of stock-
holders under this section, all the property and assets of the cor-
poration must be taken into account, and that the proceeding

must be for the benefit of all the creditors.  The assets of the corporation and its total indebtedness must be brought into the account; for until they are ascertained, neither the amount of money required to satisfy the creditors of the corporation, nor the proportion of the sum required to be paid by each stockholder can be ascertained.  The suit must be prosecuted for the benefit of all the creditors; for the trust is created for the benefit of the creditors as a class, and all are entitled to participate ratably in the common fund, and one creditor cannot, by superior diligence, either by a creditor's bill or by supplementary proceedings under the act concerning executions, obtain priority and appropriate to his own use a fund in which all the creditors have a common interest.  *Pollard* v. *Bailey, 20 Wall. 520; Mann* v. *Pentz, 3 N. Y. 415; Morgan* v. *N. Y. & A. R. R. Co., 10 Paige 290; Umsted* v. *Buskirk, 17 Ohio St. 113; Coleman* v. *White, 14 Wis. 700; Adler* v. *Milwaukee Brick Co., 13 Id. 57; Thomp. on Stockholders* §§ *351–361.*  In such a suit the corporation is a necessary party, for without the presence of the corporation as a party to the suit no account of its property or of its debts can be taken.  *Coleman* v. *White, Umsted* v. *Buskirk, supra; Thomp. on Stockholders* §§ *360–361.*

The objection to the frame of the bill and for want of parties was not made in the answer, and seems not to have been taken in the court below.  The litigation there appears to have been directed in the main to the defence, that the company was induced to make the purchase of complainant's lands by false and fraudulent representations, to which the complainant was privy. On the evidence, relief was properly denied on that ground. Indeed, the complainant's judgment against the corporation is record evidence of the validity of his claim against the corporation, which, in the absence of proof that the judgment was obtained by fraud or collusion with the officers of the company, is conclusive in a controversy such as this is, with stockholders. *Marsh* v. *Burroughs, 1 Woods 463.*

Courts of appeal entertain objections to the frame of a bill, or, on account of the omission of parties, with reluctance, where such objections have not been taken in the court below.  The

objection that this suit does not, on the face of the bill, purport to be prosecuted in behalf of the creditors of the corporation, might be disposed of by framing a decree in such a manner as to make all the creditors parties to it, so as to secure a ratable distribution of the property of the corporation, including the unpaid subscriptions to its capital stock, among all its creditors. *Marsh* v. *Burroughs, 1 Woods 463, 467 ; Ogilvie* v. *Knox Ins. Co., 22 How. 380 ; Morgan* v. *N. Y. & A. R. R. Co., 10 Paige 290 ; Thomp. on Stockholders* § *357.* The other objections are more formidable. The company is the owner of other property—the equity of redemption in the premises—and owes other debts. It assumed the payment of the Stiles mortgage, and thus became a debtor for the mortgage debt, and the two bonds it gave to Post are still outstanding. In these respects the objection to the frame of the bill is insuperable, and the corporation is indispensable as a party to a suit in which the amount of its property and the amount of its debts are involved.

For these reasons the decree should be reversed, and the record be remitted, to the end that the complainant's bill may be amended to accord with the views here expressed.

The evidence shows that Post was an active participant in the organization of the company, and that two bonds of the company, amounting to $15,000, were given to him for his share of the consideration of the purchase from the complainant. He also, on the 24th of February, 1875—co-incident with the acknowledgment of the certificate of organization by Barker— executed a paper under seal, acknowledging that Barker signed the certificate for the purpose of filling out the requisite number of corporators, and agreeing to release him—Barker—from all pecuniary responsibility, and to save him harmless from all payments whatever. In the subsequent proceedings upon a bill amended as above indicated, these facts may be brought before the court by cross-bill or otherwise, and their effect upon the liability of the defendants, or of Barker, for the payment of the two bonds given to Post, may then be considered.

The complainant's appeal was taken on the ground that the

chancellor allowed the defendants a credit of fifty per cent. on account of their subscriptions to the capital stock of the company.

As already remarked, the defendants never paid anything on account of their subscriptions. The credit was allowed to them in the decree below by force of the resolution adopted by the board of directors on the 25th of February, 1875.

Section 3 of the land improvement act declares that the capital stock of any such company shall be paid in at such times, and in such manner and installments, as the directors may by their by-laws or otherwise direct, and such payment shall be made either in money or in land—the land to be appraised by the board of directors and taken at such value, on such terms as may be agreed upon. *Rev. p. 568.*

The resolution, which is given the effect of a payment of fifty per cent. on the capital stock, was adopted on the next day after the certificate of organization was recorded, and before the conveyance by Wetherbee was acknowledged and delivered. It recites that, whereas, Edward P. Baker, Samuel Carpenter, George W. Barker, Charles F. Braune and George D. Howell, are the equal undivided owners of the equity of a certain tract &c., recently owned by Amos Wetherbee, which they are desirous of conveying or having conveyed to the company as payment in part of their respective subscriptions to the capital stock, and the company is willing to accept the same, therefore it was resolved to appraise the same at $100,000, subject to mortgages amounting to $50,000, and to accept the balance of $50,000 as payment of fifty per cent. of the capital stock subscribed; and the president and secretary were directed to execute and deliver the company's bonds and mortgages for the $40,000 of the purchase-money, and its agreement to assume the Stites mortgage of $10,000. The company never acquired any other property, real or personal, besides the land mentioned in the Wetherbee deed.

The complainant had no notice, actual or constructive, of the adoption of this resolution. Entries in the books of a corporation are, as a general rule, competent evidence of the pro-

ceedings of the corporation, and of the acts and votes of its officers transacted at official meetings; but such entries are not notice to third persons of the acts or resolutions entered upon its minutes. As to third persons, the books of a corporation are private books, and such persons are not chargeable with knowledge of matters there recorded, any more than a third person would be chargeable with knowledge of entries made against him in the books of a private person. *1 Greenl. on Ev.* § *493;* 1 *Whart. on Ev.* § *662;* 2 *Taylor on Ev.* § *1581;* *Haynes* v. *Brown, 36 N. H. 545;* *Marriage* v. *Lawrence, 3 B. & Ald. 142.* The minutes of the corporation were competent evidence of the fact that the board of directors adopted the resolution in question, but they cannot be made available to the defendants to charge the complainant with knowledge of this action of the directors, so as to raise up against him an equitable estoppel arising from his consent to their proceedings. The cases—and they are numerous—in which creditors have been allowed to enforce contributions from the holders of stock certified illegally to have been paid up when issued, are illustrations of this principle.

The resolution of the 25th of February can have the effect given to it only in case the credit on the defendant's subscription was made in compliance with the statute. The question is one of considerable importance, for if directors of a corporation can, by a simple resolution, write up a credit of fifty per cent. on the subscriptions to its stock, they may by the same facile method cancel the entire obligation of subscribers for its capital stock, and defeat the claims of creditors on that security.

The directors who adopted this resolution were the same individuals who were the subscribers to the capital stock of the company, and who were to receive the benefit of the credit proposed. They were the contracting parties on both sides. The resolution recited that they were the owners of the equity in the tract of land, which was untrue. They were neither the owners of any estate in the lands, nor did they in reality become purchasers of it. As promoters of the company, they occupied the position of agents of the company in acquiring the property on which the company was to be formed. The deed was made

directly to the corporation, and the corporation gave its obliga-
tions for the whole purchase-money. The cost of the property
was $50,000, and it is apparent that was a full, if not an exces-
sive, valuation. It was put in by the directors at a valuation of
$100,000. The property was over-valued, and the fifty per
cent. credit on the subscriptions to the capital stock had nothing
for its support but a paper resolution adopted by interested
parties.

The first section of the act requires the certificate of organiza-
tion to specify the amount of the capital stock, and the names
and residences of the stockholders, and the number of shares
held by each. This certificate is required to be acknowledged,
and to be recorded in the county clerk's office, and then to be
filed in the office of the secretary of state. The legislative pur-
pose in exacting a statement of the amount of the capital stock,
and of the names and residences of the subscribers, and of the
amount subscribed by each, with the publicity of a public record
of the certificate, was to provide a means of assuring the pay-
ment of debts contracted by the corporation. The legislature
contemplated that subscriptions to the stock should be the capital
with which corporations organized under the act should engage
in business, on the credit of which the corporators were em-
powered to contract debts in the corporate name without any
liability for such debts beyond the amount of their subscriptions
to the stock. The capital stock subscribed is a substitute for
the personal liability of partners in ordinary copartnerships,
and creditors are entitled to a *bona fide* exercise of the compul-
sory powers of the corporation to compel subscribers to pay in
their subscriptions. Any arrangement between the agents of the
corporation and subscribers for its stock that their subscriptions
shall be merely colorable, or less onerous than they purport to
be on the face of the subscription, is void as a fraud upon credit-
ors. *Thomp. on Stockholders § 124.* So rigidly is the obliga-
tion of subscribers to the capital stock enforced in favor of
creditors, that it is no defence to such a subscription that the
stockholder was induced to make his subscription by false and
fraudulent representations of the corporation or its agents.

*Ogilvie* v. *Knox Ins. Co., 22 How. 380; Upton* v. *Triblicock, 91 U. S. 45; Chubb* v. *Upton, 95 Id. 665; Oakes* v. *Turquand, L. R. (2 H. L.) 325.* The subscriptions to the capital stock constitute a trust fund for the payment of debts. The officers and managers of the corporation are trustees of the fund. They cannot squander it or dispose of it to the prejudice of creditors without an equivalent consideration, and the trust cannot be defeated by any simulated payment of the stock subscriptions, or by any device short of actual payment. in good faith. *Sawyer* v. *Hoag, 17 Wall. 610; Boone on Corp. § 112.*

Nor does the fact that the third section of the act under which the company was organized, empowers the directors to accept either money or land in payment of subscriptions to stock, supersede the obligation of subscribers for its capital stock to make payment of their subscriptions. This section simply provides the manner in which payment shall be made.

The contract of subscribers to the capital stock of a corporation organized under this act is that contained in the certificate of organization on file. The certificate is made the official record of the amount of the capital stock of the company, and of the subscribers to it, and of the amount of the subscription of each. It is the charter under which the corporation is organized. The fifth section of the act concerning corporations gives creditors a right to call upon stockholders to pay such proportion of their unpaid subscriptions to the stock as shall be necessary to pay debts up to the par value of the shares as fixed by the charter. *Rev. p. 178.* The inquiry in any proceeding by creditors against stockholders under the latter section is, whether the subscriptions of stockholders have actually been paid.

The earlier cases held that the contract of the subscribers could only be fulfilled by payment in money. In later cases this doctrine has been relaxed, and stock issued and paid up in work and labor, or in the purchase of property the corporation is authorized to hold, has been held to have been legally issued. Statutes have also been passed authorizing corporations to purchase property needed for their business, and to issue stock in payment for it, or to accept such property in payment for sub-

scriptions to the capital stock. But in all such cases transactions under such powers have been upheld only where the contract for the rendition of services or the purchase of property, payable in stock, has been made in good faith, and the property taken in payment of stock subscriptions has been put in at a fair *bona fide* valuation; and the courts have inflexibly enforced the rule that payment of stock subscriptions is good as against creditors only where payment has been made in money or in what may fairly be considered as money's worth. *Boynton* v. *Hatch, 47 N. Y. 225; Van Cott* v. *Van Brunt, 82 Id. 535; Talmadge* v. *Fishkill Ins. Co., 4 Barb. 382; Carr* v. *Le Fevre, 27 Pa. St. 413; Drummond's Case, L. R. (4 Ch. App.) 772; Forbes and Judd's Case, L. R. (5 Ch. App.) 270; Spargo's Case, L. R. (8 Ch. App.) 407; Baron De Beville's Case, L. R. (7 Eq. Cas.) 11, 14.* Indeed, courts could not on any other doctrine administer the law of corporations, with the immunity of stockholders from responsibility for the debts of the corporation, and the substitution of stock subscriptions in the place of their personal liability, without opening the door for the grossest frauds upon creditors. In *Pell's Case, L. R. (8 Eq.) 222*, stock was issued to Pell for which he transferred to the company his interest in the good-will and stock-in-trade of a business carried on by him. The master of the rolls put his name on the list of contributors, and directed an inquiry as to the value of the property handed over by him, and ordered that he should be allowed such value and no more towards payment of his shares. This judgment was reversed by L. J. Gifford, sitting in the court of appeals, on the ground that the agreement to accept the property in payment of the stock had not been impeached by evidence or otherwise. *L. R. (5 Ch. App.) 11.* But the judgment of the master of the rolls was approved and the reversing judgment disapproved by L. J. James, in *Dent's Case, L. R. (15 Eq.) 407, 411*, and by the same eminent judge, with the concurrence of Lord Chancellor Selborne, in *Fothergill's Case, L. R. (8 Ch. App.) 270, 278, 280;* and Lord Selborne said that an act of parliament (*30 and 31 Vict. c. 131*) was passed to counteract and put a stop to

33

the dangers and abuses incident to all such arrangements as those which led to that decision.

The third section of the land improvement act is legislation of the class above referred to. It authorizes the directors to accept land in lieu of money—as an equivalent for money—in payment of subscriptions to the capital stock. In an action by creditors against a stockholder in such a corporation, the proposition stands in this way : The stockholder is bound to pay his subscription as it appears in the certificate of organization—the act authorizes him to pay either in money or in land—and the inquiry is, has he paid in money or in money's worth? In responding to this inquiry we must bear in mind the purpose for which subscriptions for stock are created a trust fund—the payment of debts—and the persons in whose favor the trust is created—creditors of the corporation for whose benefit the directors of the company are to administer this trust. It is manifest that such an issue cannot be resolved in favor of the stockholder, unless he was the owner of the land he transferred to the company as payment ; and the action is impeached and made invalid *pro tanto*, if it be shown that the property was taken at a price in excess of a fair valuation.

In neither respect can the resolution of the board of directors of February 25th, 1875, be sustained. The land which was accepted in payment of fifty per cent. of the subscriptions to the capital stock, did not belong to the defendants. They were agents in promoting the formation of the company, and effected the purchase for the company. The corporation paid the whole purchase-money by giving its obligations for it, and the property was not worth more than the sum for which these obligations were given. It is true that the statute directs the lands taken in payment of subscriptions to be appraised by the board of directors, and to be taken at their valuation by the company. But the directors, in making the appraisement and valuation and dealing with their stock subscriptions, act in a fiduciary capacity, and are bound to discharge the duties of the trust with fidelity. This appraisement, it is manifest, was illusory, and made only in the interest of the directors who were to profit by it. Under

---

these circumstances the resolution in question was a nullity, and the defendants, so far as concerns the claims of creditors, have paid nothing on account of their subscriptions to the capital stock of the company, and are indebted for the full amount thereof, as the subscriptions thereto appear on the face of the certificate of organization.

The fifty per cent. credit was improperly allowed, and for this reason, also, we think the decree should be reversed.

Both parties succeeding on the appeal, no costs will be allowed to either in this court.

<i>Decree unanimously reversed.</i>