WILFRED B. WOLCOTT, receiver, &c.,

*v.*

MARTIN E. WALDSTEIN et al.

[Submitted October 25th, 1915. Determined February 16th, 1916.]

1. While in valuing property future prospective profits may be considered, such profits cannot be made a basis of valuation for purposes of capitalization in a new enterprise where no earning capacity has been demonstrated; and where property of that kind for which only $70,000 was paid, was on incorporation capitalized at $250,000, it was obviously overvalued.

2. Where incorporators to whom stock was originally issued received it without payment, they are liable to creditors of the corporation, notwithstanding their subsequent transfer.

3. On bill to declare corporate stock unpaid and procure an assessment for payment of creditors, where the only defendants served asserted rights against persons not served, but such rights were merely to contribution, that fact will not defer a decree against such defendants for the benefit of creditors.

4. On a bill to declare corporate stock unpaid and force assessments, where defendants were liable regardless of their transfer, the *bona fides* of such transfer is immaterial.

5. Where stock certificates were issued and placed in escrow, but were never delivered to persons for whom they were intended, there was no consummation of the stock issue.

6. Upon insolvency of a corporation, the proportionate amount of unpaid subscriptions and the amount necessary to satisfy debts and expenses may be ascertained by the chancery court either by original bill or by petition in the insolvency suit.

On bill by a receiver in insolvency to declare corporate stock unpaid and to procure and enforce an assessment for the payment of creditors.

*Messrs. Berry & Riggins,* for the complainant.

*Mr. George W. W. Porter,* for the defendants.

LEAMING, V. C.:

1. It is impossible to escape the conclusion that the capital stock of this corporation was originally issued in payment for property purchased at a gross overvaluation.

The nearest approach to a justification of the valuation placed upon the property is to be found in the claim that the circumstances which existed at the time the valuation was determined upon may have justified a reasonable expectation that the corporation under proper management would develop an earning capacity proportionate to its capitalization. Future prospects or prospects of future profits can never be properly ignored in any intelligent valuation of property; but it is well settled that under our statute such prospective future profits cannot be made the basis of valuation for purposes of capitalization in a new enterprise with neither present nor demonstrated earning capacity. The situation here presented bears no analogy to that presented in *Railway Review* v. *Groff Drill Co., 84 N. J. Eq. 321,* since affirmed on opinion below.

The property here in question was taken over by the corporation at a valuation of $300,000, and payment was authorized by stock to the amount of $250,000 (the entire authorized capital) and bonds for $50,000. Waldstein, the vendor and leading spirit in the newly organized corporation, had recently acquired the property at a valuation of $20,000. Of that amount $5,000 had been paid by him in cash and $15,000 was to be paid in bonds of the new corporation to the amount of $15,000 and stock of the new corporation to the same amount. Waldstein had also erected a tram on the property which had cost not more than $50,000. This estimate of $70,000 as the cost of the property to Waldstein is more than liberal, and I am fully convinced that the property could not have been properly valued at that time at more than that amount for purposes of capitalization. Any value in excess of that amount which may have appealed to the board must have been as anticipated future profits of an enterprise wholly untried and essentially experimental.

It is difficult, if not impossible, to accredit the members of the board who made the valuation with good faith in the action

taken by them in determining the "fair value" of the property purchased. The members of the board who determined upon the value and authorized the purchase were defendants Waldstein, Bomeisler and Cassidy. Whether Bomeisler and Cassidy at that time had an interest in the property with Waldstein is a matter of dispute; but it is reasonably certain that if at that time they had not already acquired an interest in the property they at that time anticipated sharing with Waldstein, through a settlement with him, a part of the stock the issuance of which they were authorizing. The personal interests and purposes of these three men were so far inconsistent with an impartial exercise of their statutory duty as to appropriately challenge the good faith of their valuation, especially in the light of all the circumstances disclosed by the evidence. The provision of the charter of the corporation authorizing directors to contract with the corporation cannot be understood to justify an invasion of the statutory requirements of *bona fide* valuation.

It seems reasonably apparent that the real plan of the members of the board was to turn the property over to the corporation at an artificial valuation adequate in amount to constitute the stock full paid and certify out bonds to the amount of $50,000 and to have $75,000 of the full-paid stock so issued placed in trust for delivery as a bonus, dollar for dollar, in the sale of the remaining $75,000 of bonds. Evidence of the plan to give full-paid stock as a bonus with bonds is to be found in the testimony of Caspary and in the consideration expressed in the deed to Bomeisler and in the circumstance of placing $75,000 of the stock in trust with Cassidy.

I am fully convinced that the property conveyed to the company could not have been properly regarded by the parties fixing the valuation as actually worth more than $70,000 and that the valuation in excess of that amount must be deemed either as deliberate and intentional overvaluation or as an unlawful capitalization of prospective future profits. For the purposes of this case I think it immaterial which.

2. I think it immaterial in this case whether at the time the

property was purchased defendants Bomeisler and Cassidy had fully acquired an interest in the property. They at that time anticipated sharing with Waldstein, the vendor, the stock which was to be issued for the property and subsequently did share it. Assuming that their final determination to acquire this stock was reached after the purchase was authorized, they thereby became purchasers from Waldstein of stock issued for property which they had assisted him in overvaluing; in these circumstances it is doubtful whether the equitable rights of creditors against either of the three can be distinguished. But still assuming that Bomeisler and Cassidy purchased their stock from Waldstein after he had acquired it, and recognizing, for present purposes, a distinction between the liability of the person to whom such stock is originally issued and a person to whom it is transferred with notice of the infirmity, the liability of Waldstein to creditors would be for the entire overvaluation, notwithstanding the fact that he has since·disposed of part or all of his stock, and the liability of Bomeisler and Cassidy to creditors would be for the unpaid part of the stock acquired by them, notwithstanding the fact that they may have since parted with part or all of it. As $40,000 par value of stock was acquired by Bomeisler and $34,000 of stock was acquired by Cassidy the liability of each of them is far in excess of the amount which will be necessary to satisfy the debts and expenses of the receivership, and the only materiality as to whether they are to be treated on the footing of "original subscribers" or as transferees of an original subscriber, relates to rights of contribution. As Bomeisler and Cassidy are the only defendants who have been served, contributory rights can be hereafter determined and need not defer a decree herein against them.

3. The view taken here touching the liability of defendants Bomeisler and Cassidy renders it unnecessary to determine whether their transfer of stock to Beale was *bona fide*.

4. I am satisfied that the stock issue of August, 1905, was not consummated. The stock certificates were issued and placed in escrow, but were never in fact acquired by the person for whom they were intended.

5. Fear is expressed in the brief of defendant Cassidy that a decree herein ascertaining the amount that has been paid on the stock of the insolvent corporation and providing for an assessment for so much of the unpaid amount as may be necessary to pay creditors and the receivership expenses may not be conclusive in a foreign jurisdiction in an action by the receiver to collect the unpaid amounts. The suggestion is that proceedings for assessment should be by petition in the suit in which the receiver was appointed and not by independent bill, as herein. In view of the decisions of our court of errors and appeals I think it must be recognized as finally settled that the conclusive ascertainment of the proportionate amount of unpaid subscriptions and the amount necessary to satisfy debts and expenses may be had in this court at the instance of the receiver in insolvency either by original bill or by petition in the insolvency suit. *Gilson* v. *Appleby, 79 N. J. Eq. 590,* and *Easton National Bank* v. *American Brick Co., 69 N. J. Eq. 326; 70 N. J. Eq. 722,* were of the former nature, the latter case having assumed that status by stipulation prior to the decree. *Holcombe* v. *Trenton White City Co., 80 N. J. Eq. 122; 82 N. J. Eq. 364,* is of the latter nature. But should defendants Bomeisler and Cassidy desire to satisfy their liability and seek contribution from other stockholders there can be no difficulty in the decree adequately providing for them to enforce their remedy through the medium of the receivership at their own expense in such manner as they may be advised is necessary.

6. The amount of stock issued was $250,000. As the bonds for $50,000 were not issued a credit of $70,000 must be made as a payment on the stock, leaving a balance of $180,000 unpaid, or seventy-two per cent. of the par value of the stock. The debts were ascertained at the hearing. The probable expenses of the receivership must yet be ascertained. I will hear proofs and ascertain that amount on any motion day on notice. A decree will then be advised for an assessment for sufficient to satisfy the debts and receivership expenses. Unless it can be then shown that some stockholders other than the two who have answered can be made to respond, the assessment must be made of a per-

centage amount sufficient to enforce against each of the answering defendants the ascertained debts and expenses, and a decree entered against each of them for that amount, with the right of each to enforce proportionate contribution from the other.