I think it clear that the capital stock of this insolvent corporation, all of which has been issued for property purchased, must be assessed for an amount adequate to pay all claims against the corporation which have been proven before the receiver and also the necessary administration expenses.
The corporation was incorporated and its entire capital stock issued for property purchased in the year 1915. At that time section 49 of the Corporations act (Revision of 1896), 2 Comp.Stat. p. 1630, had been amended by chapter 15 of the laws of 1913 (P.L. 1913 p. 28) and the provisions of the former section to the effect that in the absence of actual fraud in the transaction the judgment of the directors as to the value of the property purchased should be conclusive, had been eliminated. The provisions of the act of 1913 which are material herein are: "Provided that when property is purchased the purchasing corporation must receive in property * * * what the same is reasonably worth in money at a fair, bona fide valuation; and provided further, that no fictitious stock shall be issued; that no stock shall be issued for profits not yet earned, but only anticipated." But even without attributing special significance to the circumstance that the 1913 act removes the earlier provision touching the conclusiveness of the action of the board in the absence of actual fraud, it appears to be now well established that in proceedings of this nature, in behalf of creditors, the rule touching evaluation is that defined in See
v. Heppenheimer, 69 N.J. Eq. 36, and Holcomb v. TrentonWhite City Co., 80 N.J. Eq. 122; affirmed, 82 N.J. Eq. 364. That rule may be said to be embodied in the plain and specific language of the act of 1913 above quoted.
The property which the board of directors authorized to be purchased from defendant Pierce for the full amount of the capital stock of the corporation — $50,000 par value — as described in the agreement of sale and in the resolution of the board, was as follows: *Page 182 
"The exclusive privilege, right and authority from E.I. duPont deNemours Company, of Wilmington, Delaware, together with a leasehold interest on a certain property at Carney's Point, New Jersey, to open a general merchandise store at said Carney's Point by which authority the company may supply exclusively the inhabitants and persons at the three general camps established by the E.I. duPont deNemours Company, at Carney's Point, New Jersey."
That purchase was authorized November 22d 1915, at the first meeting of the board of directors of the corporation. The board comprised defendants Conlen and Pierce and one Baker, the latter being merely a man supplied by the company employed to organize the corporation.
The principal controversy, so far as value is concerned, is touching this "exclusive privilege." Defendant Conlen, an attorney-at-law, claims that the duPont deNemours Company agreed with him to confer on his clients, defendants Pierce and defendant Fireng, an exclusive privilege to conduct a general store at the camps of that company at Carney's Point and to execute a lease of a store building at that place for the business stated, it being agreed that a corporation was to be formed by Conlen for that purpose. Just what it is claimed that exclusive privilege comprised is not entirely clear; apparently the claim is that the duPont deNemours Company, engaged that it would not lease to any other person a store for a similar purpose, thus permitting only one store of that nature within the boundaries of its property or camps; I do not understand the claim to be that the duPont deNemours Company was in any way to undertake to deny to other stores outside the camps the right to supply people within the camps. No written agreement was ever made touching any exclusive privilege, and no one connected with the duPont deNemours Company has testified touching the existence of any exclusive privilege; its existence depends upon the testimony of defendant Conlen. On December 20th, 1915, subsequent to the resolution of purchase of the lease and exclusive privilege, a lease was executed by E.I. duPont deNemours Company to the now insolvent corporation for *Page 183 
the store contemplated by the resolution. That lease is for one year with the privilege of two years at a rental of $150 per month, payable monthly. No reference to any exclusive privilege or other matters not ordinarily incident to a lease is therein contained. This lease is the only written agreement made by the duPont deNemours Company and appears to be the final transaction between the parties to it. Clearly there has never been conferred upon the insolvent corporation the right or power to enforce against E.I. duPont deNemours Company anything in the nature of an exclusive privilege, even to the extent of requiring that corporation to refrain from establishing an opposition store on its property. Nor is it clear why, if anything in the nature of an exclusive privilege was to be conferred, such engagement was not embodied in the lease. As the final transaction between the E.I. duPont deNemours Company and the insolvent corporation and a final expression of the rights of the parties touching the store the lease appropriately should have embodied all engagements relating to it and its operation; in the absence of any written agreement to the effect that the E.I. duPont deNemours Company would not execute similar leases to others during the term, the absence of a covenant of that nature in the lease powerfully negatives the notion that the lessor corporation was to be obligated to that effect. It is not to be doubted that an exclusive privilege of some sort was sought by defendant Conlen in his negotiations with the duPont deNemours Company; and at the time the lease and exclusive privilege referred to were transferred to the insolvent corporation in exchange for its capital stock Conlen and his associates no doubt thought they enjoyed or were to receive an exclusive privilege of great prospective value; but the evidence does not justify the conclusion that the transfer made by defendant Pierce in behalf of his associates to the insolvent corporation conferred upon that corporation any right in the nature of an exclusive privilege as claimed. By that transfer the insolvent corporation acquired the lease, subsequently executed by the E.I. duPont deNemours Company, and nothing more. That lease was *Page 184 
a lease of a store on the tract of land of the duPont deNemours 
Company for one year, with the privilege of an additional year, at a rental of $150 per month; the lease thus carried its own burden, and any value it had could only be the difference, if any, between the rental named and a fair rental value, and in addition a prospective ability of the insolvent to make large profits from its proposed business to be conducted in that store. In determining to purchase that lease any purchaser would necessarily give consideration to the prospect of successful and profitable operation, but prospects of that nature in a new enterprise are not to be capitalized. See v. Heppenheimer,supra. In the absence of evidence disclosing that the property was leased at substantially less than a fair rental value the lease could not afford a basis for capitalization.
The exclusive right which has been so strenuously contented for appears to have embodied the notion that with no other stores of a similar nature located on the duPont deNemours Company tracts little business competition would be encountered. It transpired, however, that land near by was not owned by the duPont deNemours Company, and competing stores were there established. If the undefined exclusive right which was assumed to be sold was an exclusive right to supply the camps of the duPont deNemours 
Company obviously the vendors not only did not but could not possess the right which they assumed to convey. Nor is it to be overlooked that the board of directors of the insolvent who authorized the purchase were in truth the vendors. Conlen was the moving spirit in the whole enterprise, Pierce, the second member of the board, assumed to be the owner of the rights conveyed, but such rights as existed or were conveyed were in fact owned by defendant Fireng, equally with Pierce, and defendant Conlen cannot be said to have been without interest. Baker, the third member of the board was a mere dummy subject to the will of the others. For that board of directors to appraise the value of the rights to be sold was an empty form. In substance the three defendants named were selling to themselves. Stewart v. LehighValley Railroad Co., 38 N.J.L. 505, 522. Clearly in its inherent force and effect *Page 185 
the entire transaction can be considered as no more than an empty form to have the capital stock of the corporation issued as full paid stock and then divide the stock so issued among the vendors who authorized sale and purchase.
I am unable to find that anything of substantial value capable of capitalization passed to the insolvent corporation, and in consequence an assessment must be made of the necessary amount to pay the debts and administration expenses.
Since the claims filed by creditors of the insolvent aggregate but $7,632.90, it is obvious that an assessment to meet those claims and administration expenses need not be more than approximately one-fifth the par value of the stock. That an assessment of that amount is well within the liability of the stockholders cannot be doubted.
The three defendant stockholders are William J. Conlen, Joseph W. Pierce and Joseph S. Fireng, Jr. Of the five hundred shares issued one hundred shares were taken by Conlen, two hundred shares by Pierce and two hundred shares by Fireng. The assessment will be made against these three defendants in the proportions named.
Defendant Pierce has answered; the other two defendants were served by substituted service and decrees pro confesso have been entered against them. It is urged that the latter two defendants are not liable to assessments because notice of the hearing was not given to them. Such notice was unnecessary. As defendants against whom a decree pro confesso has been taken no notice of hearing is required (Chancery Rule No. 184), and the proceedings before the vice-chancellor to whom the cause has been referred requires a determination as to all defendants; the reference to the vice-chancellor dispenses with a reference to a master so far as defendants are concerned against whom decreespro confesso have been entered.
Nor can it be doubted that the two non-resident stockholders who have not answered will be bound by a decree herein as to the priority and amount of the assessment. The proceedings for an assessment may be had in this court at the instance of the receiver in insolvency, either by petition *Page 186 
in the insolvency suit, or, as here, by original bill in aid of the insolvency administration. Wolcott v. Waldstein, 86 N.J. Eq. 63,67. As to stockholders resident in another state it has been specifically determined in this state that a stockholder is so far an integral part of the corporation that, in the view of the law, he is to that extent privy to the proceedings; and when in such a suit an assessment on stock has been ordered by the court to meet corporate liabilities he cannot question the propriety of the assessment in an action at law subsequently brought against him to enforce assessment either in this or in another jurisdiction. Cumberland Lumber Co. v. Clinton HillLumber Manufacturing Co., 57 N.J. Eq. 627; McDermott, Receiver,
v. Woodhouse, 87 N.J. Eq. 615; Marin v. Augedahl,247 U.S. 142, 150. In the present proceedings substituted service of subpoenas has been made on all stockholders who have not answered, and decrees pro confesso have been entered against them.
The amount necessary to meet administration expenses must yet be ascertained. I will hear proofs and ascertain that amount on any motion day on notice to the answering defendant. A decree will then be advised for an assessment for sufficient in amount to satisfy the debts and expenses. *Page 187