The receiver of the defendant, Highland Queen Packing Company, an insolvent New Jersey corporation, prays that its three stockholders be assessed a sum sufficient to pay creditors and administration expenses, on the theory that their stock is not fully paid.
The stock is without par value, issued pursuant to R.S.14:8-6:
"Every corporation organized under this title may issue and may sell its authorized shares without nominal or par value, from time to time, for such consideration as may be prescribed in the certificate of incorporation, or, if so provided in the certificate of incorporation, as from time to time may be fixed by the board of directors, * * *
"Any and all shares without nominal or par value issued as permitted by this article, shall be deemed fully paid and non-assessable, and the holder of such shares shall not be liable to the corporation or its creditors in respect thereof." *Page 535 
Defendant's certificate of incorporation, pursuant to the statute, authorizes the board of directors to fix the price of the stock. The directors, at their organization meeting, received and accepted an offer from two of the respondents, Jesse B. Triplett and Boice E. Triplett, to sell to the corporation the business then being conducted by them in consideration of the assumption of debts, and especially a note to the third respondent, Edgar H. Lackey, for $950 and for the further consideration of three hundred shares of capital stock to be divided among the three respondents: "It is understood that the said shares of stock shall be issued at the price of $20 per share and representing a total value of $6,000."
The sale was consummated, and the stock issued. As part of the transaction, Lackey paid the company $1,050 which he had promised the Tripletts to put in the business. The corporation books show a debt to Lackey of $2,000, namely, the amount of the promissory note, plus his additional payment, but Lackey denies that the company is so indebted to him. "I was not in charge of the books of the defendant corporation nor did I have an opportunity to examine them before the receiver was appointed in this case. In truth, I gave the said sum of $2,000 in payment for the said stock."
The assets and good will of the business turned over by the Tripletts to the corporation were worth only $1,500, so it is alleged. The receiver takes the position that the consideration for the stock fixed by the directors was $20 per share, or a total of $6,000, of which only $1,500, or $1,500 plus $1,050, has been paid, and that there is owing by the stockholders the difference or so much thereof as may be necessary to satisfy creditors.
The duty of holders of par value stock — as distinguished from non-par stock — to contribute toward the payment of creditors finds three supports: One is the contract of the subscriber to pay a certain amount for his shares. Milliken v. Caruso
(N.Y.), 98 N.E. Rep. 493. Upon the insolvency of the company and the abandonment of its business, he is relieved of his obligation except so far as may be necessary to satisfy creditors. But his contractual debt to that extent remains enforceable at the suit of creditors or receiver. *Page 536 Wetherbee v. Baker, 35 N.J. Eq. 501; Cumberland Lumber Co. v.Clinton Hill Lumber Manufacturing Co., 57 N.J. Eq. 627; Hood v.McNaughton, 54 N.J. Law 425. Second comes the trust fund or fraud theory which rests liability upon the representation or holding out to persons extending credit to the company, that its capital, in a certain sum, has been paid in full. The third basis for liability is statutory. "It depends upon the stockholder's voluntary acceptance for consideration touching his own interest of a statutory scheme to which watered stock under whatever device issued, is absolutely alien and which requires stock subscriptions to be made good for the benefit of creditors of insolvent companies." Easton National Bank v. American Brickand Tile Co., 70 N.J. Eq. 732, 738.
The statutory plan on which stockholders' liability depends is found principally in three sections of our Corporation act (R.S.14:8-13; formerly Rev. p. 178 § 5; Comp. Stat. p. 1610 § 21), provides that where the capital shall not have been paid in full, and the capital paid shall be insufficient to satisfy debts, each stockholder shall be bound to pay the sum necessary to complete the amount of each share held by him or such proportion thereof as shall be required to satisfy the creditors. The other two sections are R.S. 14:8-9 (formerly Rev. p. 186 § 54; Comp.Stat. p. 1630 § 48) and R.S. 14:3-9 (formerly Rev. p. 187 §55; Comp. Stat. p. 1630 § 49). In the event less than the full amount of the stock is paid and the company becomes insolvent, the stockholders are liable to pay in the balance regardless of any contract or understanding which they had with the corporation, for any agreement by the company to accept less than par is void as to creditors. Liability does not depend on a "holding out" to creditors.
Par value stock has a definite value, fixed by the certificate of incorporation, stated in terms of dollars, but it may be issued for money or property or services. Stock without par value is issued for a "consideration" prescribed by the certificate of incorporation or by directors or stockholders. The consideration fixed may be money or property, or anything *Page 537 
that constitutes a good and valuable consideration. AllenhurstPark Estates, Inc., v. Smith, 101 N.J. Eq. 581, 610.
In Smith v. General Motors Corp., 289 Fed. Rep. 205, a suit by a solvent corporation on a subscription to its stock, the circuit court of appeals said that a subscription for stock of a definite par value and one for no par value stock at a fixed and definite price, seemed to depend upon the same principles and affirmed a judgment for the amount due on the subscription to non-par stock.
Likewise, in the case of insolvency, pretty much the same principles determine the obligations of subscribers and holders of either class of stock. If the consideration for non-par stock is duly fixed at $20 a share, and only $10 a share is paid in, then R.S. 14:8-13 becomes effective and the stockholders may be assessed. Or if the consideration be certain property and the stock is issued though only a part of the property is transferred to the corporation, the stockholders must answer to the call of creditors.
Counsel for respondents direct attention to the provision inR.S. 14:8-6 that "shares without nominal or par value issued as permitted by this article, shall be deemed fully paid and non-assessable, and the holder of such shares shall not be liable to the corporation or its creditors in respect thereof." A similar provision relating to par value stock issued for property is found in R.S. 14:3-9 and has been part of our statute law many years. "The stock so issued shall be fully paid stock and not liable to any further call." Prior to 1917, the statute also declared, "Neither shall the holder thereof be liable for any further payments under any of the provisions of this act." Despite these provisions, a holder, with notice, of par value stock issued for property at an inflated valuation is liable to creditors. Easton National Bank v. American Brick and TileCo., supra; See v. Heppenheimer, 69 N.J. Eq. 36; Holcombe v.Trenton White City Co., 80 N.J. Eq. 122; 82 N.J. Eq. 364;Bryson v. Conlen, 104 N.J. Eq. 180. So when stock without par value is issued for less than the prescribed consideration, it is outside the plan of the statute, and the holder thereof, with notice, is *Page 538 
liable for the balance of the consideration, or so much thereof as may satisfy creditors.
Another clause of R.S. 14:8-6 gives the board of directors, within thirty days after issuance of such stock, power to allocate part of the consideration to surplus. Dividends may be made out of the surplus thus created, but not out of the capital.R.S. 14:8-19. Since the directors of the defendant corporation did not exercise this power, I need not consider the possible effect on creditor's rights, of an assignment to surplus of part of the consideration for which the stock was issued.
The question remains whether there was delivered to the corporation in exchange for the stock the full consideration as fixed by the directors. Careful examination of the minutes satisfies me that the only consideration which the Tripletts offered to give and the directors agreed to accept, was the transfer of the business conducted by the Tripletts. The directors, by accepting the offer, fixed the consideration for the stock within the intent of R.S. 14:8-13. The meaning of the statement in the minutes that the stock should be issued at the price of $20 per share, or a total value of $6,000, is not clear. Certainly the parties did not intend that $6,000 should be paid in, additional to the transfer of the business, or even that the difference between $6,000 and the value of the business should be paid in. Probably the sentence has some relation to the deal with Lackey, who was paying $2,000 for a third interest in the enterprise.
The duly fixed consideration for the stock was fully satisfied and the stockholders are not assessable.
The receiver also asks that the Tripletts be ordered to deliver to the receiver certain formulas which, he claims, they sold to the corporation. The proofs disclose, however, that they sold only the right to use the formulas so long as the corporation should exist as a going concern. Order denied. *Page 539