## John W. Cooney Company,

### *vs.*

## Arlington Hotel Company.

In the Matter of the Petition of James Frank Ball, Aulick Palmer and Peyton Gordon, Receivers of Arlington Hotel Company, to assess stockholders of said Arlington Hotel Company on unpaid stock subscriptions.

### *New Castle, May 25, 1917.*

General Corporation Law (22 Del. Laws. c. 394), § 20, provides that when the assets of a corporation are insufficient to pay its creditors and the whole capital stock has not been paid in, each stockholder shall be bound to pay on each share held by him the sum necessary to complete the amount of the par value of each share, or such proportion as shall be required to satisfy the debts of the company, and further provides that the sum unpaid may be recovered as provided in section 49, after an execution has been returned unsatisfied, as provided for in section 51. Section 21 authorizes the corporation to obtain subscriptions to stock when the whole capital has not been paid or subscribed, and section 22 provides for enforcing the payment of subscriptions by the directors. Section 49 provides that when the stockholders of a corporation are liable to pay the debts of the company, any person to whom they are liable may have an action at law against any one or more of the stock-

holders, or may have his remdey by bill in Chancery, while section 51 declares that no suit may be brought against a stockholder for any debt of the corporation until judgment be obtained against such corporation and execution returned unsatisfied. On bill by a creditor, a corporation was adjudicated insolvent and a receiver appointed. *Held*, that though some of the provisions for enforcing the liability of stockholders on unpaid subscriptions are applicable to a going concern, nevertheless, a court of equity has jurisdiction, on petition of the receivers, to estimate the claims against the corporation, and provide for an assessment against those stockholders who had not paid for their shares or whose subscriptions were unpaid.

The contingent liability of stockholders for the debts of the corporation in the amount to which they are indebted for their shares is an equitable asset which vests in the receivers, or at least is enforceable by such receivers for the benefit of all creditors who come into the case.

Independent of statute, the unpaid capital due from stockholders is a part of the assets of the corporation, and so belongs to it and not to the creditors.

. Under Act General Assembly March 19, 1913 (27 Del. Laws, c. 194; Rev. Code 1915, § 3884), in effect making a receiver a *quasi* assignee, a Delaware receiver of a corporation may maintain without territorial limits of the jurisdiction suit to enforce an assessment against shareholders.

Where a receiver of an insolvent corporation proceeds to enforce the liability of stockholders indebted for their shares, a creditor may have his claim paid from the unpaid balance, even though he has not obtained a judgment against the corporation on which execution was returned unsatisfied; the provisions in General Corporation Law, §§ 49, 51, providing for suit by a creditor in such contingency, not applying to a proceeding by the receiver.

Corporate stock issued and outstanding and not paid for is a fund for the benefit of creditors, and, in general, all who hold stock not paid for are liable to creditors for the amount so unpaid.

A Delaware corporation cannot make a subscription contract which will free the subscriber from the liability to pay for his shares imposed by the General Corporation Law on stockholders for benefit of creditors; the principle being that shares of stock in a corporation are a substitute for the personal liability of partners.

Those acquiring corporate stock without a formal subscription take it subject to the statutory liability to make payment in full if necessary for the benefit of creditors.

As to creditors, there is no difference between the liability of holders of stock and subscribers to stock to pay the par value of shares if necessary for payment of corporate debts.

Under General Corporation Law, § 14, and Constitution, Article IX, § 3, providing for the issuance of corporate stock for "work done," the expression does not include promotion services performed before incorporation, and when the interest of creditors is affected, it should not include prospective labor or work already done and labor to be done.

While under General Corporation Law, § 14, and Constitution Article IX § 3, allowing corporate stock to be issued for work done, the judgment of directors as to the value of such services is conclusive in the absence of fraud, an issue of nearly $3,000,000 worth of common stock in a corporation for promotion services and services rendered in disposing of preferred stock is fraudulent, and may be attacked by stockholders; there being no attempt even to show that the services were of a value corresponding to the stock issued.

Where the directors issued corporate stock of a value greatly in excess of the value of services performed and to be performed respecting the incorporation of a company, an innocent purchaser for value who took the shares is exempt from liability to pay any part of their par value.

Common stock given as a bonus to purchasers of preferred stock having been deposited in a voting trust, the purchasers taking trust certificates, and the trustees holding the legal title to the stock for the purpose of voting it, *held*, that persons to whom voting trust certificates were issued were the beneficial owners of the stock, and were liable to corporate creditors for the amount unpaid thereon, even though the legal title thereto was in trustees.

In such case, all purchasers of the preferred stock who received voting trust certificates for common stock took them as a bonus, there being no intention on the part of the corporation that payment therefor should be made; and hence, notwithstanding the recitals in the certificates of common stock that they were fully paid, the purchasers were charged with notice of nonpayment, and were bound to respond if necessary to protect corporate creditors to amounts unpaid on the common stock.

An agreement between a corporation and its stockholders that corporate stock should be issued otherwise than for money paid or the statutory equivalent is void; hence an agreement that common stock should be issued as a bonus to purchasers of preferred stock is invalid.

Purchasers of the preferred stock of a corporation who received common stock as a bonus cannot escape liability for amounts unpaid on their preferred shares on the ground that such shares could not have been

lawfully issued under General Corporation Law, § 13, declaring that at no time shall the total amount of the preferred stock exceed two-thirds of the actual capital paid in cash or property, for when they acquired the preferred stock, knowing that the common stock was issued as a bonus, they must have known that the only source from which the corporation could obtain capital was from the preferred stock, while creditors might not have known that fact.

In such case, purchasers of preferred stock who received voting trust certificates for common stock issued as a bonus are in the same position as purchasers who received the actual shares, for they were put on inquiry, and an inquiry would have shown that at the first meeting of the directors, all of the common stock was ordered issued for promotion services, etc., and bonus purposes, and the voting trust was arranged at that time.

Where a corporation had power to issue preferred stock, but exercised such power ineffectually or informally, stockholders taking the stock are, as against creditors, estopped from urging the invalidity of the issue to escape payment.

The provision of General Corporation Law, § 13, that in no event shall a holder of preferred stock be personally liable for the debts of the corporation does not exempt holders of preferred stock from calls or assessments up to the par value for creditors, but merely exempts them from liability beyond that imposed by section 20.

In case of insolvency of a corporation, all the moneys due from stockholders who have not paid for their stock constitute a trust fund is for creditors, and there is no difference between the preferred stockholders and common stockholders.

Though creditors of a corporation knew at the time of extending credit that its common stock was issued as a bonus, holders of such common stock may be required to pay the par value thereof for the benefit of such creditors.

Stockholders liable to assessment for amounts unpaid on their shares, who are also creditors, cannot set off the amount which they will be assessed against the debts due them, but must pay their assessment and their share in the fund when realized.

Stockholders who took stock with notice of irregularities in the issue thereof and who extended credit to a corporation are not, because of their knowledge, estopped from participating as creditors after they have paid the assessment levied for amounts due on their shares.

That a corporation itself made a call on stockholders to pay the amounts due on shares subscribed for does not, after insolvency, prevent the court from making a call or assessment for the protection of creditors.

Where a corporate receiver had been appointed and an assessment against the stockholders who had not fully paid for their shares was necessary, such assessment should not be levied against a stockholder who had been adjudicated a bankrupt, but in the absence of evidence no stockholders will be excluded on the ground of financial irresponsibility.

Where the stockholders of a corporation were delinquent in paying for their shares and on insolvency an assessment was necessary, the whole assessment may be made against delinquent stockholders within the jurisdiction of the State wherein the corporation was organized and the receiver appointed, such stockholders upon making payment being entitled to enforce contributions from other stockholders, and for that purpose may use the decree making the assessment.

Where receivers of an insolvent corporation petitioned that its debts be estimated and an assessment levied against stockholders who had not fully paid for their shares, the defense of the statute of limitations based on a previous call for payment by corporate directors is one to be raised by individual stockholders when suit is brought to enforce their liability.

While ordinarily creditors of an insolvent corporation whose assets are being administered by a receiver are not allowed interest beyond the date of the appointment, except on liens which bear interest, creditors of a corporation are, where the amounts due from shareholders on unapid shares exceed the amount of the claims, entitled to have interest calculated on their claims.

Where a corporation is adjudicated insolvent, and the receivers appointed petition that the liabilities be estimated and an assessment levied against those shareholders who have not paid the par value of their shares sufficient to satisfy the corporate debts and costs of receivership, etc., the stockholders, though not parties, are so far an integral part of the corporation that they are deemed privy to the proceedings, and for that reason cannot question the propriety of the assessment when made though it depends in part on estimates.

In a proceeding on petition of receivers to levy an assessment against those shareholders who had not fully paid for their shares, proof that the corporate books show one to be the owner of specified shares and to be indebted therefor makes out a *prima facie* case on which the court will fix the liability to be imposed on each share of stock, so that the receivers can test by suit the *status* of persons supposed to be stockholders and their liability for the amount assessed against them.

In a proceeding by receivers to levy an assessment against those stockholders who had not fully paid for their shares, contentions that a particular shareholder was excused from liability because of notations

made on his subscription, or because of a release by the board of directors, or because of the bar of the statute of limitations, are personal defenses which will only be disposed of in a direct proceeding against the shareholder.

In a proceeding by corporate receivers to levy an assessment against shareholders who had not paid for their shares, the court will not pass on the defense of one appearing on the books to be a shareholder, and who was a director, which defense was to the effect that a certificate made out in his name, but assigned, had been exhibited to him to qualify him for a director, and that he had never held the shares appearing in his name which were marked fully paid; but will, for purposes of the assessment, treat him as a shareholder.

Where only one stockholder was a resident of the State wherein the corporation was organized and a receiver appointed, and the amount due from him on his unpaid shares was sufficient to discharge all obligations, the receivers, in a proceeding to levy an assessment against stockholders on their unpaid shares, will be authorized to collect from the resident stockholder the entire amount due creditors, such stockholder to be subrogated to the rights of receivers and creditors against other stockholders whose liability would be fixed by the proceeding.

Where receivers of an insolvent corporation petitioned for the levy of an assessment against shareholders who had not fully paid for their shares, those stockholders who had made payments on their stock in excess of their proportion of the amount necessary to be levied should be excluded, and those stockholders who had made payments on account of their shares should be given credit therefor; some of the stockholders having paid nothing.

STATEMENT OF THE CASE. The matter under consideration is the petition of receivers of an insolvent Delaware corporation for authority to collect from stockholders of the company the money not paid on their shares of stock in order that the receivers may pay the debts of the company remaining unpaid after applying thereto the assets of the company which have come into their hands.

On October 28, 1914, a bill was filed in this court against the defendant, the Arlington Hotel Company, by John W. Cooney Company for itself and on behalf of all other creditors of the company for the appointment of a receiver, and therein the complainant alleged that as a creditor it had obtained a judgment against the defendant company; that an execution

thereon had been returned *nulla bona;* that the defendant company was insolvent; and that the assets of the defendant company consist for the most part of unpaid subscriptions to its capital stock. A receiver was prayed for. Later a decree *pro confesso* was entered, and the defendant was adjudged to be insolvent, and receivers were appointed to wind up its affairs.

Afterwards this present proceeding was instituted by petition of the receivers, setting forth matters which are of record in the cause, viz: That creditors of the defendant company had been notified to file their claims and notice given to all persons interested, including stockholders, of their right to except to any claims so filed, and that claims of creditors filed and allowed aggregated $466,739.42. A list, or schedule, of holders of outstanding stock, preferred and common, was annexed with the dates and history of the issue of the shares, and it was alleged that no payments had been made thereon except as specifically stated in the schedule; and further, that no call had been made for the payment of the subscriptions. And further, that T. Coleman du Pont, also called Coleman du Pont, one of the stockholders on the list, was the only stockholder who resided in Delaware. The cost of the receivership and expenses of collecting from the stockholders their stock unpaid for was estimated at $100,000.00. The prayer of the petition was that the court levy an assessment requiring payment by stockholders of such amounts as may be found necessary to pay the debts of the company and the expenses, with leave to bring actions to recover the assessments.

On this petition an order was made requiring the stockholders named in the schedule to appear and show cause, and for notice to them by registered letter. Proof was made of the sending of the notices, and acknowledgments of the receipt thereof by nearly all of the addressees.

Several of the stockholders have answered the petition, viz: Murray A. Cobb, apparently the holder of ten shares of common stock, by answer denied being a stockholder and denied liability. Z. D. Blackistone, stated in the schedule to be the holder of preferred stock and no common stock or voting

trust certificates, among other things denied the power and right of the company to issue any preferred stock, because no actual capital had been paid to the company in cash or property. Albert L. Stavely, stated in the schedule to be the holder of preferred stock and also the holder of a certificate under the voting trust, and who had paid in full for his preferred stock, admits that he subscribed and paid for shares of preferred stock, but never had any common stock or any voting trust certificates. William H. Fenn, stated in the schedule to be the holder of common stock. T. Coleman du Pont, stated in the schedule to be the holder of both preferred and common stock.

Subsequently a hearing was had upon the petition and the answers thereto, and testimony of witnesses was heard orally by the Chancellor and exhibits and records introduced in evidence.

So far as deemed pertinent to the matters now decided, it appeared that the company was created under the General Corporation Law of Delaware, pursuant to a certificate of incorporation recorded January 28, 1911. By it the authorized capital was fixed at $5,500,000.00. divided into fifty-five thousand shares of par value of one hundred dollars, of which twenty-five thousand shares were to be preferred stock and thirty thousand shares to be common stock, with the following statement: "The common stock shall be non-assessable, full paid." The three incorporators subscribed for shares aggregating one hundred. On January 28, 1911, the incorporators met, organized, adopted by-laws, elected directors and took other formal organization steps, but no other business was transacted.

On February 28, 1911, the first meeting of the directors was held, at which five of the nine persons who had been elected directors were present: Coleman du Pont, Frank M. Andrews, George Howard, Murray Cobb and Frederick E. Chapin, and officers were elected. The following resolution was adopted at that meeting:

"Upon motion duly made and seconded, and by the affirmative vote of all present, the following resolution was adopted:

"Resolved, that as the success of the enterprise will depend largely upon the energy, ability, and integrity of George Howard, Frank M. Andrews and James F. J. Archibald, in securing options on the property, promoting, financing and managing the same, and inasmuch as it is desired to offer additional inducements to subscribers of the preferred stock and to remunerate the said George Howard, Frank M. Andrews and James F. J. Archibald for services rendered and to be rendered by them, and by others, therefore shall it be, and hereby is, assigned and transferred to the aforesaid persons the entire issue of the common stock, to be used by them for the purposes named, with the distinct understanding that the holders of the common stock shall agree to transfer the same to a voting trust consisting of the aforesaid persons, and to receive in lieu thereof trustee certificates, for the purpose of vesting in them the right to vote thereon for a period of five years from the date of the incorporation, such voting trust being created for the purpose of carrying out the purposes aforesaid and the articles of incorporation uninterruptedly during that period."

Afterwards printed subscription blanks were used to obtain subscriptions to preferred stock. Shares of all of the common stock were issued, and the plan for a voting trust as to the common stock was carried out.

Pursuant to the plan of distributing common stock to subscribers to preferred stock, authorized by the directors at their first meeting on February 28, 1911, Howard and Andrews, having in their names as trustees nineteen thousand, eight hundred shares of common stock, made two agreements with the company in the form of declarations of trust, one of December 12, 1911, and the other of September 25, 1911, by which the shares (which were to be so issued as non-assessable and full paid) should be held by them as trustees for those to whom the bonus stock was given, the trustees to have a right to vote the shares for a period of years, and to issue to the beneficiaries certificates called "Voting Trust Certificates" representing the several holdings of common stock. These beneficiaries could transfer the certificates, and the trustees undertook to keep books to register these certificates. The forms of these trust agreements are substantially the same and differ only as to the time for which they were to run.

Accordingly Howard and Andrews issued under the first of these trust agreements seventeen voting trust certificates, and

under the second agreement twenty such certificates, aggregating three thousand, seven hundred and forty-seven and one-half shares. By the agreement with the company these remaining shares for which voting trust certificates were not issued are the property of Howard and Andrews as holders of common stock not paid for.

Some of the subscribers to the preferred stock being in default, the directors on July 7, 1913, made a call for payment of all unpaid subscriptions. Subsequently the enterprise failed, almost all of the property of the company was sold by lien creditors, and receivers appointed in the District of Columbia realized on some assets and paid creditors in part. A bill was then filed in this court, as stated above. The other pertinent facts are stated in the opinion of the Chancellor.

The important provisions of the Constitution and statute referred to in the opinion are these:

Section 3 of Article IX of the Constitution is, as follows:

"No corporation shall issue stock, except for money paid, labor done or personal property, or real estate or leases thereof actually acquired by such corporation."

Section 13 of chapter 65 of the Revised Code of 1915, paragraph 1927, authorizes the creation of classes of stock, and then provides, as follows:

"* * * But at no time shall the total amount of the preferred stock exceed two-thirds of the actual capital paid in cash or property."

Sections 20, 49 and 51 of chapter 65 of the Revised Code of 1915, paragraphs 1934, 1963, and 1965 are, as follows:

"Sec. 20. *Stockholders Liability for Part Paid for Stock.*—When the whole capital stock of a corporation shall not have been paid in, and the assets shall be insufficient to satisfy the claims of its creditors, each stockholder shall be bound to pay on each share held by him the sum necessary to complete the amount of the par value of such share as fixed by the charter of the company or its certificate of incorporation, or such proportion of that sum as shall be required to satisfy the debts of the company, which said sum or proportion thereof may be recovered as provided for in section 49 of this chapter, after a writ of execution against

the corporation has been returned unsatisfied, as provided for in section 51 of this chapter."

"Sec. 49. *Liability of Officers, etc.; Actions for.*—When the officers, directors or stockholders of any corporation organized under this chapter shall be liable by the provisions of this chapter to pay the debts of the corporation, or any part thereof, any person to whom they are liable may have an action on the case against any one or more of them, and the declaration shall state the claim against the corporation, and the ground on which the plaintiff expects to charge the defendants personally; or the person to whom they are liable may have his remedy by bill in Chancery."

"Sec. 51. *No Suit against Director or Stockholder Until Judgment against Corporation.*—No suit shall be brought against any director or stockholder for any debt of a corporation organized as aforesaid, of which he is such director or stockholder, until judgment be obtained therefor against such corporation and execution thereon returned unsatisfied."

*John R. Nicholson*, and with him *Henry H. Glassie*, of the Washington, D. C., Bar, for the receivers.

*Andrew C. Gray*, and with him *H. Preston Gatley*, of the Washington, D. C., Bar, for Albert L. Stavely.

*Hugh M. Morris*, and with him *Hugh H. O'Bear*, of the Washington, D. C., Bar, for Z. D. Blackistone.

*Robert H. Richards*, for William H. Fenn.

*Thomas F. Bayard*, and with him *Samuel E. Swayze*, of the Washington, D. C., Bar, for Murray A. Cobb.

*William S. Hilles* and *Robert H. Richards*, for T. Coleman du Pont.

THE CHANCELLOR.    The Arlington Hotel Company has been adjudged by this court to be insolvent, receivers have been appointed for it, the creditors of the company have proved in this court their claims, and they have been allowed, all the stockholders having had notice of the filing of the claims and been given an opportunity to contest them by exceptions to be taken thereto.    It appears as a fact proven in the case that the aggregate of the debts and the estimated cost of administration of the receivership, including the cost of litigation with stockholders to recover from them moneys due and unpaid on shares of stock held by them, exceeds the amounts claimed to

be due upon the shares of preferred stock, and is less than the amount claimed to be unpaid upon the shares of common stock, and is, of course, less than the amount claimed to be unpaid on shares of preferred and common stock taken together. By their petition representing, among other things, these facts and the names of holders of the two classes of stock, as they appear on the books of the company, the receivers ask the court to authorize an assessment on shareholders of both classes for the payment of the creditors. Of this petition notice was given to all stockholders and some have appeared and filed answers, and the rest have done neither.

The first question to be considered is the one raised as to the jurisdiction of the court respecting the proceeding against the shareholders. It is contended for the shareholders, that even assuming that there is an unpaid balance due from them on their stock up to the par value thereof (which is denied), their liability is to the creditors and not to the company, or its receiver; and that it cannot be enforced by the receivers, at all; and if at all, then in no other way than by the method of procedure prescribed by the statute which imposed the liability, though counsel are not more specific as to the method of procedure. In general the *Delaware Incorporation Act* authorizes the corporation to obtain subscriptions to stock when the whole capital stock has not been subscribed (*section* 21); and provides to the directors remedies for enforcing payment of the subscriptions (*section* 22). These sections are applicable to a corporation while it is a going concern and seem to have no bearing on the questions here raised.

When the assets of the corporation are insufficient to pay its creditors, and the whole capital stock of the company has not been paid in, then by *section* 20 it is declared that each stockholder shall be bound to pay on each share held by him the sum necessary to complete the amount of the par value of such share, or such proportion of that sum as shall be required to satisfy the debts of the company. It is not declared in the Act to whom this liability is due, and certainly it is not declared that the liability is to creditors only, to the exclusion of the corporation, or to the exclusion of a receiver therefor appointed

either before or after dissolution to wind up its affairs. This section goes on to provide that the sum unpaid on the stock, or the proportion thereof required to satisfy the debts of the company, may be recovered as provided in *section* 49 after an execution against the company has been returned unsatisfied, as provided for in *section* 51. By *section* 49 when the stockholders of a corporation are liable under the act to pay the debts of the company, any person to whom they are liable may have an action at law against any one or more of the stockholders, or "may have his remedy by bill in Chancery." By *section* 51 no suit may be brought against a stockholder for any debt of the company "until judgment be obtained therefor against such corporation and execution thereon returned unsatisfied."

There are other sections in the act which relate to the powers and duties of receivers or trustees of corporations, and to the method of winding up the affairs of the company, including the filing and allowance of claims of creditors and distribution of moneys of the company by the receivers. But these have generally been considered to refer not to the receivers appointed by the court on the ground of insolvency, or for any other reason than the dissolution of the company, receivers after dissolution being substituted for directors, who wind up the affairs of the company. These provisions are unimportant in this case. In order to ensure uniformity of procedure in the administrative details in liquidations it is enacted in the rules of the Court of Chancery, adopted pursuant, as is believed, to legislative authority, the rules are made applicable to all receivers of corporations whether dissolved or not.

When a corporation becomes insolvent the liability of a stockholder to pay for his stock is either fixed by *section* 20, or that section states a liability existing independent of the statute; and it is not now necessary to declare whether they are substantially the same, or what the differences between them are if they are not the same. Obviously the purpose, and the only purpose, of these requirements of the statute is to furnish proof that the debt is due and that the company is insolvent, as the basis of further proceedings against stock-

holders. A choice of remedies is given to such a creditor; he may either sue a stockholder at law, or may have a remedy by bill in Chancery. If he elects to proceed in Chancery he probably would file his bill against one or more of the stockholders, either separately or jointly, and might be given relief in that way, though such a proceeding would be entirely novel in Delaware and would be a distinct and undesirable departure in this court, for it would be using an equity court to enforce the payment of a debt—a thing which could be done as well, if not better, in a court of law. A creditor of a company who has obtained a judgment against it, and whose execution has been returned unsatisfied, may also file a bill against the corporation alone, obtain therein a decree appointing receivers, and in that cause have the claims of all creditors of the company ascertained and allowed, and their priorities and preferences determined. After the assets of the company have been collected the deficiency of assets to meet the ascertained liabilities is established. The receivers may then on behalf of the complainant creditor, and of all other creditors who may come in by proving their claims in the cause, including creditors who have not theretofore obtained, or do not thereafter obtain, a judgment against the corporation for the claims due them from the company, proceed to recover from one or more delinquent stockholders, or all of them, the sum or sums unpaid on their stock, or whatever part thereof it is necessary to collect in order to pay the claims of all of the creditors. As a step in such proceeding the court is asked to authorize or direct a levy, call or assessment on the stockholders, and for this purpose to ascertain who the stockholders are, the number of shares held by them, and whether by the records of the company the stock is paid for and the pro rata sum which each should pay to make up the deficiency of assets, and some other matters which will be considered hereinafter. Having fixed these preliminary features, the receivers may be authorized to collect by separate suits at law against the stockholders, wherever they or their property be found, the amounts due from them, and in such suits the individual defenses of each stockholder are available to them.

In this particular case it is not necessary to decide whether the liability of delinquent stockholders of this company for their unpaid subscriptions to capital stock can be enforced through a receiver only after a judgment has been recovered against the corporation and an execution thereon returned unsatisfied, for the complainant is a creditor of the company, and has obtained such judgment and an execution thereon has been returned unsatisfied.

The conclusions as stated above are not in conflict with either the letter or spirit of the statute, and on the contrary are clearly in accord with the spirit thereof. That they are based on the peculiar functions and powers of a Court of Chancery is too obvious to need enlargement. But as the question of jurisdiction is here raised for the first time, the reasons may be amplified.

Clearly *section* 49 provides alternative remedies of either a direct action at law by a creditor against a stockholder, or a remedy by bill in Chancery, for that is the express language of the section. There is, moreover, a good reason for providing alternative remedies. A direct action may be not only an efficient but a just remedy, as, for instance, if but one stockholder was delinquent in paying for his stock and there be but one creditor of the company whose debt was unpaid. In that case only the two persons would be interested, and there would be no need to adjust liabilities among several in proportion to the number of shares held, or other equities between several classes of delinquent stockholders. On the other hand, if there are several creditors and several stockholders the adjustment of benefits and liabilities between them is properly cognizable in a Court of Chancery, which has suitable machinery to bring before it all parties interested on both sides of or having an interest in the cause, and secure to each his advantage and justly apportion his liability to pay. There is no requirement that the remedy of the creditor by bill shall be directly against the stockholders, for it is not prescribed against whom or even by whom it be filed. The language of the act is broad and general enough to include a bill for the appointment of a receiver of a corporation wherein its insolvency is adjudicated.

Obviously it is the suitable court adapted to determine insolvency of the company, collect its assets, ascertain and adjudicate the claims against it and the priorities thereof, as representing both creditors and stockholders; and having power to conclude both stockholders and creditors in such an adjudication the court can finally and conclusively determine the amount needed from all the stockholders and the proportionate part thereof which each must pay, and so fix the liability of stockholders without the jurisdiction as well as of those within by a rule uniform as to all.

Furthermore, this contingent liability of stockholders for debts of the company is an equitable asset which vests in the receivers, or at least enforcible by such receivers, for the benefit of all creditors of the company who come into the cause. Besides, independent of the statute, the unpaid capital due from stockholders always was and is a part of the assets of the company, and so belongs to the company and not to the creditors. In *Sanger v. Upton*, 91 *U. S.* 56, 60, 23 *L. Ed.* 220, the court said:

"Unpaid stock is as much a part of this pledge, and as much part of the assets of the company, as the cash which has been paid in upon it. Creditors have the same right to look to it as to anything else, and the same right to insist upon its payment as upon the payment of any other debt due to the company. As regards creditors, there is no distinction as between such a demand and any other asset which form a part of the property and effects of the corporation."

Judge Bradford in *Irvine v. Elliott*, (*D. C.*) 203 *Fed.* 82, 104, pointed out the difference in this regard between the statutory double liability of stockholders and the liability for unpaid subscriptions to stock.

Furthermore, this liability is more effectively enforced through a receiver; for a Delaware receiver may now sue anywhere to enforce an assessment when made. This is surely a consequence of the act of 1913 (27 *Del. Laws*, *p.* 479; *Revised Code*, *par.* 3884), which in effect makes a receiver a *quasi* assignee and so removes the limitation of an ordinary receiver to the territorial limits of the jurisdiction wherein he was appointed. *Bernheimer v. Converse*, 206 *U. S.* 516, 531, 534, 27 *Sup.*

*Ct.* 755, 51 *L. Ed.* 1163, followed by *Converse v. Hamilton*, 224 *U. S.* 243, 32 *Sup. Ct.* 415, 56 *L. Ed.* 749, *Ann. Cas.* 1913D, 1292.

Not only is the present method of giving to the creditors their statutory right against stockholders who have not paid in full for their stock the most efficient way, so far as creditors are concerned, and the most just way so far as the stockholders are concerned; but it is also the way permitted by the statute. One creditor may file the bill, or one or more or all creditors may join in one bill, or one may act for all of them. So here, one creditor as a step to enforce the stockholders' liability to him has a bill filed in his own and their behalf established insolvency, had receivers appointed, and he and the other creditors have established their claims against the company. The liability will be ascertained by this assessment, individual defenses of a limited character excepted, and the liability when established is binding on all stockholders, and enforcible by the receivers wherever the stockholders and their property may be reached.

It is not a reasonable interpretation of the statute to hold that no creditor can have his debt paid from the unpaid balance due on shares of stock unless he has obtained a judgment against the company and an execution thereon has been returned unsatisfied. Obviously the only purpose of the judgment against the company and the execution on it is to determine that the debt is owing and that there is no property of the company from which it can be collected, or in other words, that the company is insolvent. Both of these elements may be determined in a Court of Chancery by a bill brought by one or more creditors, or as here by a judgment creditor, and the claims of all other creditors allowed, and their priorities, if any, determined, the assets collected and the deficiency of assets over liabilities determined (which has in fact already been done in this case), as well as determining in a proceeding like that of the pending petition the proportionate liability of all stockholders to meet such deficiency in such way as to bind both creditors and stockholders here and elsewhere.

In *Cook v. Carpenter*, 212 *Pa. St.* 165, 61 *Atl.* 799, 1 *L. R. A.* (*N. S.*) 900, 108 *Am. St. Rep.* 854, 4 *Ann. Cas.* 723, a court of

equity sustained its jurisdiction of a bill by assignees of an insolvent company to collect for the benefit of creditors of the company unpaid capital because it was a trust fund for all creditors, who were numerous, whether the proceeding originates in the name of one, or several, or of all creditors.

This present method of enforcing delinquent stockholders' liability to creditors is perfectly fair, because they have notice of every step taken in it. It is equally beneficial to them, because it consolidates proceedings, saves costs and expenses, and gives each a right to contest every step including the rights of creditors and the liabilities of the other stockholders.

The jurisdiction of this court to determine in this method the matters raised by the petition of the receivers is therefore upheld.

In reaching conclusions as to the other questions in the case, great weight has been given to the decisions of the courts of New Jersey, because of the practical identity of the language of the statutes in the two states, and it is not necessary to go so far as to hold that they are binding as authorative interpretations of a statute adopted by this State from New Jersey. True, by the New Jersey statute the remedy against delinquent stockholders on behalf of creditors is expressly given to the receiver in case of insolvency, and there is no statement there as to the form of the remedy to be used. But as herein pointed out, a receiver of a Delaware corporation has the same right inferentially and the form of the remedy mentioned in the Delaware statute is like that used in New Jersey without express statutory authority. Interpretations of the New Jersey statute and practice under it are cogent to influence the Delaware courts in like cases.

Having determined that the present proceeding is a proper one, and that the court has power to make or authorize the assessment on delinquent stockholders for the benefit of creditors, it is desirable to state the general theory of the character of the liability of such stockholders as distinct from the procedure to enforce it. If there were no statute on the subject it might be important to consider the several theories which have been advocated and adopted as to the origin, nature and

extent of the liability of stockholders to creditors; as, for instance, whether the holding out theory or the trust fund theory is the correct one; and if pertinent differences of importance result then to adopt one theory rather than the other. Inasmuch as there is a statute which imposes such a liability, that alone is a sufficient source of liability for the purposes of this proceeding. All doubts as to the character and basis of stockholders' liability to creditors under the law of New Jersey are finally settled in *Holcombe v. Trenton, etc., Co.,* 80 *N. J. Eq.* 122, 82 *Atl.* 618 (which was affirmed by the Court of Errors and Appeals). There the court considered the case of *Donald v. American, etc., Co.,* 62 *N. J. Eq.* 729, 48 *Atl.* 771, 1116, and the remarks there of Judge Dixon, which were so much discussed by counsel, and said this as the final words:

"The doctrine that corporate stock issued, outstanding and unpaid for is a trust fund for the benefit of creditors, is a hard and fast rule imbedded in the decisions of the courts of this and other states, and is never relaxed. In this State [New Jersey], however, the stockholder's liability to creditors no longer depends alone upon the trust fund theory, but is held to be statutory. *Easton, etc., Bank v. American, etc., Co.,* 70 *N. J. Eq.* 732 [64 *Atl.* 917, *L. R. A. (N. S.)* 271, *10 Ann. Cas.* 84]."

Indeed in an earlier case the Court of Errors and Appeals in New Jersey had held the same thing, viz: *Easton, etc., Bank v. American, etc., Co.,* 70 *N. J. Eq.* 732, where the court said:

"But in this State the stockholders' liability to creditors does not depend alone or chiefly upon the theory of 'holding out.' It depends upon the stockholders' voluntary acceptance, for consideration touching his own interest, of a statutory scheme to which watered stock, under whatever device issued, is absolutely alien, and which requires stock subscriptions to be made good for the benefit of creditors of insolvent companies, without distinction between creditors who had notice and those who had none."

The same view was taken by the United States District Court of Connecticut in a case where the liability of stockholders under a statute of Connecticut similar to that of New Jersey was being enforced. *Rosoff v. Gilbert, etc., Co., (D. C.)*

221 *Fed.* 972 (1915). With such convincing authority respecting statutes similar to the Delaware statute this court is amply justified in adopting the same view as to stockholders of a corporation created under the laws of Delaware. Corporate stock issued, outstanding and not paid for is a fund for the benefit of creditors, and in general all who hold stock not paid for are liable to creditors for the amount so unpaid. Both the Constitution and statute define what is payment.

A Delaware corporation cannot make a subscription contract which will free the subscriber from the statutory liability, for that statute is notice to all who make such contracts, and is read into and becomes a part of every stock subscription contract. The fundamental principle is that shares of stock in a corporation are a substitute for the personal liability of partners, and the liability to pay for stock taken up to the par value thereof is a fund for the benefit of creditors of the company, and whoever takes shares of stock of a Delaware corporation assumes that liability for the benefit of creditors in case of insolvency of the company. Upon holders of preferred stock, who took the shares pursuant to a subscription contract, and upon those who acquired shares of common stock without a formal subscription, the statutory liability is of course imposed. However acquired the constitutional and statutory provisions as to what constitutes payment for stock are part of the contract, express or implied, respecting both kinds of stock. As to creditors, there is no difference between the liability of holders of stock and subscribers to stock, for both are liable.

"In equity, and as against creditors, the acceptance of stock, without paying for it, places the acceptor in the position of a subscriber." *See v. Heppenheimer*, 69 *N. J. Eq.* 36, 78, 61 *Atl.* 843, 860 (1905).

Inasmuch as there is a question common to all the holders of shares of common stock, whether holders of certificates of stock or of certificates of the voting trust, that question should be determined in this present proceeding. The question is: Was the total issue of common stock rightly issued as full paid and non-assessable stock so as to exempt all of it, however

held, from assessment for creditors? "Work done" is an equivalent for money, and in the absence of actual fraud the judgment of the directors as to the value of such labor is conclusive. See *section* 14 of the Act. None of the common stock was paid for in money, and it is not so claimed by any holder thereof. But it is claimed that they were issued for services, or rather that they were paid for by services rendered and to be rendered; and as there is no proof as to the value of the services which were rendered, the stock must be treated as full paid, as it was stated to be on its face when issued by the company. It may be true, as between the corporation and a stockholder, that shares may be issued for services to be performed, though even that is doubtful. *Vineland, etc., Co., v. Chandler,* 80 *N. J. Eq.* 437, 85 *Atl.* 213, *Ann. Cas.* 1914A, 679; *Vogeler v. Punch,* 205 *Mo.* 558, 103 *S. W.* 1001; *Shannon v. Stevenson,* 173 *Pa. St.* 419, 34 *Atl.* 218. Contra, *Stevens v. Episcopal, etc., Co.,* 140 *App. Div.* 570, 125 *N. Y. Supp.* 573. "Work done" does not include promotion services performed before incorporation. *Herbert v. Duryea,* 34 *App. Div.* 478, 54 *N. Y. Supp.* 311, affirmed 164 *N. Y.* 596, 58 *N. E.* 1088. But when the interests of creditors are affected "work done" should not include prospective labor as an equivalent for money in exchange for shares of stock. By a strict construction "work done" does not include work to be done, or work done and to be done.

Whether it be moral, legal or actual fraud, or not fraudulent at all, the obvious purpose in issuing all the common stock to Howard, Andrews and Archibald, as set forth in the resolution of the directors at their first meeting on February 27, 1911, was to give them the stock without their having given the legal equivalent therefor. The most that could be claimed for it was that it was issued for services rendered and to be rendered, without stating what part of the $2,900,000.00 of common stock was issued for past services rendered and what for future services to be rendered. Furthermore the action as to the common stock was taken in the earliest stage of corporate life, viz: at the first directors' meeting after the formal organization meeting, and at the first time when

any business was done by the corporation, or any of its officers as such. When the incorporators met on January 28, 1911, for organization no business was transacted except to elect directors, and the issue of common stock was voted at the first meeting of directors on February 27, 1911, at which meeting officers were elected. With such scanty opportunity for having done work for the corporation after its organization, and in the absence of any statement of the character or value of such services theretofore rendered, or evidence of any valuation thereof by the directors, the issuing of $2,900,000.00 worth of stock for services rendered and to be rendered was of itself palpably indicative of an intention to avoid the statute and Constitution, without reference to the other features of the resolution. In *Ellis v. Penn Beef Co.*, 9 *Del. Ch.* 213, 80 *Atl.* 666, this court refused to regard as payment for stock the alleged delivery by the stockholders to the company of personal property when it appeared as a fact that though the property had been delivered it had not been paid for, but was in fact paid for by moneys of the company derived from other sources. It was a case of failure of consideration. In *Holcombe v. Trenton, etc., Co.*, 80 *N. J. Eq.* 122, 82 *Atl.* 618, stock was issued in fact for services for promoters, and inasmuch as there was not of record any actual appraisement of the value of such services, they were not regarded as payment in full and the stock so issued was still subject to assessment for creditors as not full paid. But in fixing the liability of such stockholders, the court would have allowed them as credit on the par value of the stock the reasonable compensation for services rendered, if such proof had been made.

In the present case there was no valuation by the directors of the services of the promoters, and there has been no proof offered as to the value of the services which had been rendered by Howard, Andrews and Archibald at the time of the issue of the common stock to them, though opportunity to do so was open to the stockholders. It was readily seen that $3,000,000.00 of stock was such a gross and, therefore, unlawful overvaluation that counsel did not pretend that there was any appraisement by the directors, or if they had made such a valuation that any

sensible person would have accepted their judgment. In the absence of such proof it is now open to this court to say that the directors have not determined that three million of stock was issued for work done, and that no value was given by the stockbolders to the company for the common stock. Of course, it is obvious that the stock was to be bonus stock, issued without value. Therefore, it is impossible to escape the conclusion that the shares of common stock have not been paid for in whole or part. In the hands of the original takers, Howard, Archibald and Andrews, they were liable to assessment for creditors after the enterprise failed, and the corporation became insolvent. "Holders of bonus stock are always required to pay for their shares to satisfy the claims of creditors." *Holcombe v. Trenton, etc., Co.*, (1912) 80 *N. J. Eq.* 122, 82 *Atl.* 618, affirmed without opinion in 82 *N. J. Eq.* 364, 91 *Atl.* 1069. An innocent purchaser for value who took these shares, would have been exempt from liability to pay any part of the par value thereof.

Are any of the holders of common stock who have appeared in the proceeding innocent purchasers for value without notice? Coleman du Pont is not, for he was present as a director at the meeting when the resolution as to the issue of the stock was adopted, and voted for it. Almost all of the holders of preferred stock had notice that the common stock had not been paid for, because they received voting trust certificates for bonus stock, and bonus stock means stock issued gratuitously and without payment therefor being made or expected. All to whom the voting trust certificates were issued are for the purposes of this proceeding liable as though shares of common stock to which they were entitled under the terms of the trust were actually issued to them and stood in their names. The beneficial owners of the stock held by the voting trustees are holders of the voting trust certificates and no interest in the stock is held by the trustees except such as are necessary to enable them to execute their trust. *O'Grady v. U. S., etc., Co.*, (*N. J.*) 71 *Atl.* 1040, 21 *L. R. A.* (*N. S.*) 732, 734, 735. In the case just cited the holder of a voting trust certificate was regarded as the beneficial owner of the stock represented by it.

in the hands of the voting trustees, and was therefore entitled to file a bill for a receiver of the company as a stockholder thereof, though the legal title be in the trustees. If he has the right of a stockholder, except to vote, he is subject to the lia lilities thereof to creditors in case of its insolvency.

Here all who took voting trust certificates were put on inquiry respecting the common stock, and were not entitled to rely upon a statement therein that it was full paid. They did not purchase their stock in the market, but were subscribers to stock of a new enterprise and took with their preferred stock some common stock, the prima facie evidence being that thereby they knew it was bonus stock, i. e., stock for which no legal equivalent was given. There was in the resolution of the directors authorizing the voting trust evidence that the common stock was to be given as a bonus to subscribers to preferred stock. The statement on the certificate of shares of common stock that they were full paid and non-assessable does not relieve from liability to pay therefor any holder or taker thereof, except those without notice of the fact. An agreement between a corporation and its stockholders that corporate stock shall be issued otherwise than for money paid, or other statutory equivalent, is void. *Easton, etc., Bank v. American, etc., Co.*, 70 *N. J. Eq.* 732, 64 *Atl.* 917, 8 *L. R. A.* (*N. S.*) 271, 10 *Ann. Cas.* 84; *Holcombe v. Trenton, etc., Co.*, 80 *N. J. Eq.* 122, 141, 82 *Atl.* 618; *Rosoff v. Gilbert Transportation Co.*, (*D. C.*) 221 *Fed.* 972.

To establish the liability of holders of common stock it is not necessary to allude to the suspicion as to the good faith in the transaction which arises when directors of a company make for the company contracts with themselves as promoters or otherwise, for the transaction is clearly shown to be an attempt to issue and distribute bonus stock.

It is held, therefore, that the common stock, was not rightly issued as full paid stock, but was issued without value given, and still remains unpaid, notwithstanding the statement on the face thereof to the contrary; and further, that all the original takers of the stock and holders of voting trust certificates are prima facie liable as holders of common stock, subject to such

individual defenses as properly exist. Furthermore, there is evidence that the common stock was intended from the first to be bonus stock. In the certificate of incorporation it was declared that it should be non-assessable and full paid. At the first meeting of the directors, and before anything had been done by the corporation except the most formal organization acts, and before any payments could have been made on any stock, it was voted that the certificates of common stock when printed should state that they were non-assessable and full paid. The form of subscriptions received for the preferred stock referred to the plan for floating the new enterprise viz: by preferred and common, the latter to be non-assessable. All this was quite consistent with the plan to issue common stock which could not be assessed for the purposes of the company, and as to which the directors could not make calls for payment in installments or otherwise. In other words, it was to be bonus stock. The conduct of the directors in issuing all the stock, nearly three million dollars of it as full paid and non-assessable for services performed and to be performed, is all consistent with this theory of the purpose of the promoters of the company respecting the common stock. The law of Delaware declared that purpose to be impossible of execution. All who took certificates for common stock were put on inquiry and notice of its character.

It has been claimed that the company had no right to issue preferred stock. One of the subscribers to ten shares of preferred stock, Z. D. Blackistone, who paid one hundred and fifty dollars on account thereof, claims that he is not liable to pay the balance of his subscription, on the ground that the company had no power to accept subscriptions for or issue preferred stock. This contention is based on *section* 13 of the act, which provides a way by which shares of stock could be classified into common and preferred stock with a proviso that "at no time shall the total amount of the preferred stock exceed two-thirds of the actual capital paid in cash or property." It is claimed that no actual capital was paid to the company in cash or property, all the common stock having been issued for services rendered and to be rendered, and none of it actually

paid for. All of the preferred stock, it is claimed, is over-issued stock, spurious, illegal and void, and there can be no estoppel even in favor of creditors. Blackistone was not the holder of common stock, and did not receive any voting trust certificate. This defense is certainly not available to any holder of or subscriber for preferred stock who received common stock as a bonus, or who received voting trust certificates with their preferred stock. If one subscribes to preferred stock under a plan by which subscribers for preferred stock are given shares of common stock as a bonus, and so knew that no value was given for the common stock, it would be grossly inequitable to deny creditors of the company after it becomes insolvent a right to hold preferred stockholders liable on their subscriptions to or holdings of preferred stock for whatever remains unpaid thereon. By taking the bonus stock they knew that the only source from which the company may obtain capital is from the preferred stock. They knew this and the creditors may or may not, and the latter are entitled to rely on the amount unpaid on the preferred stock up to the par thereof as a fund for the payment of their claims against the company. Those holders of preferred stock who took voting trust certificates are in the same position, for they are put on inquiry, and an inquiry would have shown that the issue of all of the common stock was ordered at the first meeting of the directors, and the voting trust was also arranged for at that meeting.

By use of the word "capital" instead of the words "capital stock," the section does more than fix the proportion between common and preferred stock. "Capital" means property and "capital stock" means the aggregate of the interests of the stockholders in the property of the company after its debts are paid. In *Person, etc., Co. v. Lipps,* 219 *Pa. St.* 99, 67 *Atl.* 1081, where a company incorporated under the laws of New Jersey had sued a subscriber for preferred stock, and the defense was that made by Blackistone, the court added into the appraised value of the property of the company the par value of the common stock issued to the defendant Lipps and another, in order to ascertain whether the requirements of the statute were complied with, though it did not appear that the common

stock had been paid for.   The corporation in this case was a New Jersey company, where the provision in question was at the time the same as the Delaware statute, and is the only one cited or found to be interpretative of the act.   So far as it goes the case cited is opposed to the contention made for Blackistone. The basis of the contention must necessarily have been that the corporation was absolutely without power to issue any preferred stock, for if it had power to do so and exercised it ineffectively or informally, then the stockholders taking the stock would be estopped as against a creditor.   This principle is recognized in *Loredo, etc., Co. v. Stevenson*, 66 *Fed. 633, 13 C. C. A.* 661, cited by counsel for Blackistone.

Cases of over-issue of stock were cited to support the contention.   In such cases the courts say creditors may know when stock is over-issued, and so cannot claim to have been deceived. For the same reason creditors have a right to assume that all the common stock issued was paid in cash or property, and so had a right to assume that the proper proportion between common and preferred stock was thereby maintained.   The provision in *section* 13 that "in no event shall a holder of preferred stock be personally liable for the debts of the corporation," does not exempt holders of preferred stock from calls or assessments for the benefit of creditors up to the par value, but was intended to exempt them only from liability beyond the par value for the needs of creditors in insolvency as stated in *section* 20, which relates to all shareholders without regard to classes.   The amount of capital paid in cash or property fluctuates and the proportion of classes of stock fluctuates accordingly.   It is imposing on creditors too great a burden to expect them to know whether the proportion has been always maintained.   If sometimes not maintained, then is all common stock before or thereafter issued void?   A strict interpretation of the statute involves possible entanglements of interests. A safer rule is to permit creditors to look to subscriptions or holdings of common stock as equal to payment in cash or property for the purposes of determining the proportion to be observed between common and preferred stock.

It is contended by some of the stockholders that sub-

scribers to the preferred stock must be required to pay the balance of their subscriptions before the holders of common stock can be called on to pay anything, and this is based on the statement that the amount due on the subscriptions arises from a contract with the company and is therefore an asset of the company which must be collected before the statutory contingent liability is enforced. But there is no foundation for the contention. In case of insolvency all the money due from all kinds of stockholders constitute the trust fund for creditors, and the statute makes no difference between the several kinds of stock. The liability arises from the relationship of the stockholder, whether it be created by contract or be implied from ownership of shares.

It is contended for some of the stockholders that the assessment cannot be made for the benefit of those creditors who at the time of extending credit to the company knew the circumstances as to the issue of the common stock, viz: that it was issued in payment for services rendered and to be rendered, and as full paid. There was evidence offered to show such knowledge on the part of some of the creditors who have filed claims, and who will be benefitted by an assessment when made and collected. This may not be the time to ascertain the facts as to such knowledge, for those creditors are not directly present in this proceeding. They are here represented by the receivers, and have had no notice of the contention against them, or opportunity to defend themselves against it. Furthermore, it may be that these matters may better be passed on when the fund for creditors has been gathered in and its distribution is open to adjustment. This seems to be the view of the court in the case cited by the solicitor for the receivers. *Selig v. Hamilton*, 234 *U. S.* 652, 656, 34 *Sup. Ct.* 926, 58 *L. Ed.* 1518, *Ann. Cas.* 1917*A*, 104. But inasmuch as the right of such creditors to look to the stockholders for payment of their claims has been much discussed, and the determination of the question probably has an important bearing on the rate of assessment to be made (if any be made) it will be considered now.

In New Jersey it is settled beyond controversy that creditors having at the time of giving credit notice that shares

of stock were issued as full paid when in fact not paid for, or who are otherwise aware of the circumstances under which bonus stock was issued, may still look to all holders of such stock (except innocent holders thereof) for payment of debts due from the company to such creditors. It was held by the Court of Errors and Appeals in the case of *Easton, etc., Bank v. American, etc., Co.*, 70 *N. J. Eq.* 732, 64 *Atl.* 917, 8 *L. R. A.* (*N. S.*) 271, 10 *Ann. Cas.* 84 (1905), after considering many cases in other jurisdictions in many of which states the liability of delinquent stockholders was not statutory. The court relied on the fact that liability in New Jersey was statutory. It was also intimated that independent of the statute creditors with notice of the irregularity might still be justified in regarding the stockholders' liability as an asset of the company for the purpose of satisfying creditors. There is much in this contention, and it may well be a proper basis for a decision on that point. But the New Jersey court did not rely on it entirely. This same rule was held in *Holcombe v. Trenton, etc., Co.*, (1912) 80 *N. J. Eq.* 122, 82 *Atl.* 618, a later case in the Court of Chancery, which was affirmed without an opinion by the court of Errors and Appeals, 82 *N. J. Eq.* 364, 91 *Atl.* 1069.

The same point was decided by the United States District Court in Connecticut in a case respecting a Connecticut corporation, the statute of Connecticut being "quite similar," as the court said, to the New Jersey statute, viz:   In *Rosoff v. Gilbert Transportation Co.*, (*D. C.*) 221 *Fed.* 972 (1915):

"There is no suggestion (in the statute) that certain creditors can enforce this liability and that certain other creditors cannot. The statute clearly contemplates that all creditors are entitled to be paid, and that stockholders are bound to pay them if the stock held by them has not been paid for in full."

In *Gillet v. Chicago, etc., Co.*, 230 *Ill.* 373, 82 *N. E.* 891, which followed *Sprague v. National Bank of America*, 172 *Ill.* 149, 50 *N. E.* 19, 42 *L. R. A.* 606, 64 *Am. St. Rep.* 17, the same view was taken of the Illinois statute, similar to New Jersey and Delaware, which gave the right to creditors against unpaid stock.

Another question affects the rate of the assessment. Some of the stockholders who are liable to assessment are also creditors of the company. Have they a right to set off the amount with which they will be assessed against the debts due them from the company? This, too, is settled in New Jersey. They will be required to pay the assessment and share in the fund when realized. *See v. Heppenheimer, supra; Holcombe v. Trenton, etc., Co., supra;* and other cases in New Jersey. So also stockholders who took stock with notice of the irregularities as to the issue thereof and who are also creditors of the company are not estopped from participating as creditors, after they have paid the assessment against their shares. *Easton, etc., Bank v. American Brick, etc., Co., supra.*

In July, 1913, the company made a call upon holders of preferred stock to pay the amounts due on the shares subscribed for. Does this, of itself, bar this court from making a call or assessment in this case, in this proceeding? In the case of *Brown v. Allebach,* (*C. C.*) 166 *Fed.* 488, 496, it was held that a receiver may collect amounts due on unpaid stock even though a call had been levied by the directors of the company while it was a going concern, and even though suits by the company to enforce the call were still pending. This view is manifestly a sound one.

Should the assessment be made against all delinquent stockholders, whether solvent or insolvent, and whether residents of Delaware, or not? There is ample authority, as well as good reason, for excluding the insolvent stockholders, and the reasons are obvious. *Rosoff v. Gilbert Transportation Co.,* (*D. C.*) 221 *Fed.* 972. In this particular proceeding it is not an important matter, for there is no clear and satisfactory proof that any of those defaulting shareholders on the list submitted by the receivers are insolvent, except one J. William Henry, who was a subscriber to shares of preferred stock of par value of $2,250, and proved to have been adjudicated a bankrupt since making the subscription. None of the stockholders of either class will be excluded from the assessment on account of financial inability to respond thereto, except J. William Henry.

There is ample authority for the proposition, that under a statute identical with the Delaware statute the whole assessment may be made against delinquent stockholders within the jurisdiction, with a right to those who pay to enforce contribution from other stockholders, and for this latter purpose to use the proceeding in which the assessment is made. *See v. Heppenheimer*, 69 *N. J. Eq.* 36, 61 *Atl. 843; Holcombe v. Trenton, etc., Co.*, 80 *N. J. Eq.* 122, 82 *Atl.* 618; *Wolcott v. Waldstein*, (1916) 83 *N. J. Eq.* 63, 97 *Atl.* 951. It is said that the liability of stockholders to creditors is analogous to that of joint grantors, and therefore the above stated principle applies. The application of this principle to this case will be considered later.

The defense of the statute of limitations is also raised so far as the liability of holders of preferred stock is concerned. It is claimed that on July 15, 1913, the holders of preferred stock were called on by vote of the directors to pay the balance of their subscriptions on or before September 15, 1913, and that the statute then began to run; and if it be a bar against the corporation it is also a bar against the receivers acting on behalf of the corporation's creditors. This defense is clearly one to be raised when suits are brought against the stockholders after the assessment and it seems to be so settled in such cases. Therefore no opinion is expressed on this point.

Should the creditors of the company who have proved their claims be allowed in addition thereto interest as against the stockholders? As against the assets of an insolvent company when its affairs are being administered by a Chancery receiver, interest is not allowed beyond the date of the appointment of the receiver, except on liens which bear interest. This is the practice in this court, as fixed by the rules of court. In a sense the contingent statutory liability of stockholders to corporation creditors is analogous to other assets of the company. But I am inclined to the view that the stockholders' liability has elements which justify charging them with a duty to contribute enough to pay interest to creditors. Interest is denied by the rules of court as an administrative measure, because if there is not enough of assets to pay all the principal the addition of interest does not increase the dividends. In case

the assets should turn out to be sufficient to pay interest, as well as the principal of claims, there is good reason why creditors should have it. Therefore, as against stockholders, creditors are entitled to have interest calculated on their claims. This is the prevailing practice in other jurisdictions, though no reason seems to have been given by the courts elsewhere for allowing it.

Without undertaking to calculate the exact amount of interest on each claim to a fixed date, it is sufficient for the present purposes to estimate the aggregate of interest. If interest for five years be allowed, it will approximately be sufficient for all. Interest at six per cent. on $466,739.42 for five years is about $140,000.00. That sum is therefore to be added to the principal, and estimated expenses, and makes the grand total to be assessed $706,739.42.

The general theory as to what should be determined by the court in a proceeding such as this is well settled. It determines that an assessment is necessary; and that involves a judicial determination of the exhaustion of the assets of the company, the adjudication of the claims of the creditors and the aggregate of the amounts due to them. To this is added the costs of the receivership in collecting the assessment, including counsel fees and legal expenses in suits against stockholders, and compensation to the receivers. These latter items are necessarily estimated, and are liable to reduction according to the conduct of stockholders in resisting payment. As to all these matters, and perhaps others, stockholders are so far an integral part of the corporation that in the view of the law they are to that extent privy to proceedings by a receiver of an insolvent company on behalf of its creditors to enforce payment for stock not paid for, and cannot question the propriety of the assessment when made. *Cumberland, etc., Co. v. Clinton, etc., Co.,* 57 *N. J. Eq.* 627, 42 *Atl.* 585; *s. c.* 64 *N. J. Eq.* 517, 54 *Atl.* 450; *Gilson v. Appleby,* 79 *N. J. Eq.* 590, 81 *Atl.* 925; *Wolcott v. Waldstein,* (1916) 86 *N. J. Eq.* 63, 97 *Atl.* 951. This is true whether the stockholders have or have not had notice of the proceeding (*Brown v. Allebach,* [*C. C.*] 156 *Fed.* 697), though that is not important in this case.

This court having ascertained the amount necessary to be raised must also ascertain who the delinquent shareholders are, the number of shares held by them respectively, and the balance due from each up to the par value of the stock held by them. It is not quite clear as to the length to which the court should go in this latter respect, or as to the character of the individual defenses which a stockholder may set up when sued by the receivers for the assessment made against him. If the receivers show from the books of the company the above facts, they have made out a case which enables the court to fix the liability to be imposed on each share of stock, so that the receivers are entitled to test by suit the status of persons supposed to be stockholders and their liability for the particular amount assessed against them pursuant to the rate as fixed by the court. This is the view stated in *Cumberland, etc., Co. v. Clinton, etc., Co.*, 64 *N. J. Eq.* 517, 54 *Atl.* 450 (1903).

Having disposed of all the questions raised which relate to all of the creditors or to the stockholders as a class or to classes thereof, it will be necessary to consider some special defenses which have been raised.

Coleman du Pont, who was a subscriber to preferred stock and in whose name shares of common stock stand as the owner thereof, by his answer to the petition claims a credit on the preferred stock of $101,650.00 paid thereon; and that the common stock in his name was not acquired from the company, but was assigned to him for a valuable consideration and upon representation by the company that the same was full paid and non-assessable. He also says that on July 15, 1913, a call for $103,350.00, the balance of his subscription to preferred stock, was made by the company, and that any claim now made by the receivers for such balance is barred by the statute of limitations. There were other defenses set up in the answer, which are applicable to all holders of both kinds of stock, and these general defenses have already been disposed of. It was also shown at the hearing that on his subscription in writing to the $480,000.00 of preferred stock a notation made by him, the effect of which was to release him from an obligation to pay the amount subscribed for in case the money received from

the subscriptions made by other persons amounted to $125,-000.00, and that as this event happened, he was under no further liability on his subscription. And also that by a subsequent resolution of the directors of the Arlington Hotel Company he was released from that obligation. As has been stated above, the defense of the statute of limitations is not passed on in this proceeding. Notwithstanding the fact that some testimony, including some produced on behalf of Mr. du Pont, was heard on these several individual defenses; and however desirable it be to have the liability of this particular holder of a large number of shares of both kinds of stock determined before an assessment is made by this court, or pursuant to its authority; and to have disposed of all questions affecting such liability; still all of these defenses partiularly asserted by and on behalf of Mr. du Pont come within the class of defenses which by the settled practice are not properly adjudicated in this proceeding, but are available as defenses to suits brought by the receivers in case an assessment is authorized. Furthermore, these personal defenses were not only not set up by his answer to the petition of the receivers, but were expressly reserved therein in general terms. Therefore, and for these reasons, no opinion is expressed as to the particular defenses above mentioned. It is found that Coleman du Pont subscribed for $480,000.00 of preferred stock, and on the books is the holder of $971,000.00 of common stock; and that as admitted by the receivers, there is a credit on the subscription to preferred stock of $75,000.00. Whether he paid, or was entitled to any further credits thereon, or whether the other individual defenses mentioned were good, is not decided.

William H. Fenn, in addition to some defenses open to all holders of common stock, sets out some special grounds of defense, which are personal to him and will not therefore be considered. Under the latter head is the representation in his answer that in order to qualify him as director a certificate for one hundred shares of common stock, marked as full paid, was issued, and exhibited to him, and an assignment thereof was endorsed thereon; that he had not and never had the certificates in his possession; and did not and does not know whether or

not they were in fact full paid, except as it was so endorsed. This defense, or these defenses, are available to him when sued for the assessment when made, and are not here decided.

It may be well to here call attention to the view of the present Chancellor in another case, which indicates that Mr. Fenn did not relieve himself of liability in this present proceeding by assigning the shares of common stock which had been transferred to him to qualify him to be a director of the company. Recently this court has announced the view that when one takes shares of stock of a corporation in order to qualify him to be a director of the company, he thereby holds himself out as being the owner of the stock in his own right, and cannot escape liability as the record owner of the stock for an assessment made thereon for the benefit of creditors of the company by showing that he never had a beneficial interest in the stock, but held it as the agent for another, to whom he had delivered the certificate for the shares of stock with a transfer thereof endorsed thereon. This was so decided in a proceeding by the receiver of Securities Company of North America, a dissolved corporation, to enforce for the benefit of creditors the liability of stockholders to pay in full for their shares of stock, where the question arose respecting stock standing on the books of the company in the name of William M. Pyle, a director of the company. *Fell v. Securities Co. of North America*, Court of Chancery, New Castle County, 1917, *ante p.* 234, 100 *Atl.* 788. As Mr. Fenn is the record owner of the stock not paid for, the receivers have made out such a case as to justify the court in including his name as one of the stockholders liable to assessment, leaving his special defenses to be settled in the suit to be brought by the receivers.

Albert L. Stavely does not set up any defense not already considered, and denies all allegations as to the common stock, and has paid in full for his subscription to preferred stock. His answer does not at this time require further particular consideration by this Court.

Murray A. Cobb denies being a stockholder, though he served as director for a while and then resigned, or attempted to resign. But he appears of record to be a holder of ten shares

of common stock not paid for, and his particular defense will not be passed on here, but will be available to him elsewhere, and probably the same principles applicable to Mr. Fenn's liability would apply to that of Mr. Cobb, both of whom took shares to qualify them as directors.

For the purposes of making this assessment, the following conclusions have been reached:

(1)   That the company is insolvent; that its debts which are unpaid aggregate $466,739.42; that the interest to which creditors will be entitled will probably aggregate $140,000.00; that the costs and expenses of the receivership and of collecting the assessment including compensation to the receivers and their legal counsel, may be estimated at $100,000.00; and that the aggregate to be assessed upon and collected from the stockholders who are liable therefor is $706,739.42.

(2)   That those liable to assessment as subscribers to preferred stock, and the amounts on which they are liable to assessment aggregating $479,210.00, are as follows (J. William Henry, the bankrupt, being omitted therefrom): [List of holders of preferred stock.]

(3)   That those liable to assessment as holders of common stock, including those holding voting trust certificates and the amounts to which they are liable to assessment, aggregating $3,000,000.00, are as follows: [List of holders of common stock.]

Upon whom and in what proportions should the assessment be made? The amount to be raised being thus fixed, and the names of the delinquent stockholders and the amounts due from them severally having been thus settled, it remains to be decided as to who of them shall now be called on to bear the burden and the proportions in which it shall be borne. This is not an easy problem, and there seems to be no precedent to guide the court. There are eight distinct groups into which the stockholders may be arranged, viz:

(1)   Subscribers to preferred stock who have paid in full for that stock and who also hold bonus common stock through the voting trust.

(2)   Subscribers to preferred stock who have paid in part

for that stock and who owe balances in varying proportions, and who also hold bonus common stock through the voting trust, or otherwise.

(3) Subscribers to preferred stock who have paid nothing, and who hold bonus common stock.

(4) Subscribers to preferred stock who have paid nothing and who do not hold common stock.

(5) Subscribers to preferred stock who have paid in part only for that stock, and who do not hold common stock.

(6) Subscribers to preferred stock who paid in full and who hold common stock not by the voting trust.

(7) Holders of common stock only.

(8) Holders of common stock and holders of voting trust certificates, and who had paid nothing on either kind of stock. The only person in this class is Charles P. Taft, who holds $1,000.00 of common stock and $50,000.00 of voting trust certificates.

One simple method of assessment is this: The total to be raised being about $706,000.00, and the aggregate of the liabilities of both preferred and common stockholders being about $3,479,000.00 (J. William Henry the bankrupt holder of $2,250.00 of preferred stock being omitted), an assessment of twenty per cent. on that aggregate liability will raise nearly $700,000.00. But some of the holders of preferred stock have paid in whole or in part for their shares, and the holders of common stock have paid nothing. Should there not be some preliminary equalization of payments exacted from the holders of common stock before the holders of preferred stock are called on? Other puzzling questions arise to vex one, in endeavoring to adjust equitably and proportionately the burden of the liability.

There is one very simple, direct and effective way, and that is to impose the whole burden on the resident stockholder. As hereinabove stated there is ample authority for so doing. So far as the records and proofs are concerned, there is but one stockholder shown to be a resident of Delaware and who has been identified and located, viz: Coleman du Pont. He has

filed an answer to the petition; subscribed for preferred stock; was a promoter of the company before its organization; was one of the first board of directors; was shown by the record to be cognizant of and an active participant in the management of its affairs throughout the early stages of its development; voted for the issue of common stock and the voting trust plan; took ten thousand shares of common stock knowing its history and purpose; and still holds nine thousand, seven hundred shares, which are subject to assessment, and as to his liability thereon to creditors there is no special individual defense set up by him. Furthermore, there is unpaid on his shares of common stock $971,000.00, which is more than sufficient to pay all the creditors and expenses. Furthermore, if he pays the creditors he will be given the right to use the present proceedings to enforce contribution from his fellow stockholders, and can do it as effectively as the receivers can. In this proceeding the liability of the other stockholders is determined, subject to their individual defenses, and this determination would be for his benefit in place of the receivers, to whose rights he would be subrogated by order of this court. Furthermore, in addition he apparently owes $205,000.00 unpaid on his subscriptions to preferred stock, which liability he denies. Furthermore, no question has been raised as to his financial ability to pay the demand. The advantage to the creditors would be great and are obvious, and this proceeding is solely for their benefit. If no other clearly equitable way to fix a rate applicable fairly to all of the various classes of stockholders is found practicable, the receivers will be authorized to collect from Coleman du Pont the whole sum necessary to pay the debts and expenses, and when payment is made he will by a decree of this court be subrogated to the rights of the receivers and creditors against other stockholders whose liability is also fixed by the court. This conclusion is reached with great reluctance, because it may be considered that the burden should be distributed among all delinquent stockholders ratably. But on the other hand the statute of Delaware imposes on each stockholder the obligation to pay the whole par value of his stock if that much is needed to pay creditors of the company in case the assets of

the company are insufficient for the purpose, and by the method above stated the creditors will be given their remedy most quickly and effectively.

Inasmuch as the question upon whom and in what proportions the assessment should be made, was not discussed by counsel, the court will, if it be desirable, hear counsel on the point before a decree is entered.

### Supplemental Opinion as to Form of Decree.

THE CHANCELLOR. After the filing of the opinion a hearing was had as to stockholders, or classes of stockholders, upon whom the assessments should be laid primarily, the amount to be assessed, and the details of the substance and form of the decree.

It is clear that there should be no distinction between the delinquent holders of common and preferred stock, but that they should be treated as one class. Also that all stockholders. who had made payments on their stock in excess of their proportion of the amount due the creditors should be excluded, and that those stockholders who have made payments on account of their shares should be given credit therefor.

There are outstanding not paid for in full 5852 shares of preferred stock, and excluding the amount unpaid on the fifty shares of J. William Henry, the bankrupt, 5802 shares of preferred and 30,000 shares of common, a total of 35,802, with a. par valuation of $3,580,200.00. An assessment of twenty per cent. on the par would raise a sum about equal to the debts and expenses. Stockholders of the company who have paid in more than twenty per cent. of the par value of their stock should in equity be excluded from assessment. There are two holders of preferred stock who are in that class, John F. Wilkins, a subscriber for two hundred and fifty shares, and John Auen, Jr., a subscriber of one thousand shares. Therefore they should equitably be excluded from the list of stockholders held liable to assessment, and the aggregate of the shares unpaid for being 4552 shares of preferred and 30,000 shares of common stock, a. total of 34,552 shares.

If an assessment of $20.52 be made upon each of 34,552 shares, and those holders of preferred stock who have paid in part for their stock, and less than twenty per cent. thereof, be credited with the amounts so paid by them thereon, then a sum will be raised which is just a trifle more than the aggregate of the debts; but as some of the items making up the aggregate sum to be raised are estimated, there is no real inequality or unfairness in fixing that amount of the assessment at that figure.

There is authority for allowing to those stockholders who pay promptly the amounts for which they are liable a credit thereon to the extent of the payment (*Scovill v. Thayer*, 105 *U. S.* 143, 26 *L. Ed.* 968) and this is equitable.

A decree will be entered in accordance with this and the earlier opinion.

In accordance with the foregoing opinions the following decree was entered:

1. "On this fourth day of August, A. D. 1917, the petition of James Frank Ball, Aulick Palmer and Peyton Gordon, receivers appointed by this Court for the said Arlington Hotel Company, praying, among other things, that this Court levy an assessment on the stockholders of the said company requiring them to severally pay such amount of their several and unpaid subscriptions to the capital stock of the said company as the Court shall ascertain to be necessary to pay the debts of the said corporation with interest, and the expenses incident to the winding up of said corporation's affairs by said receivers, having been filed in this cause on the thirtieth day of October, A. D. 1916, and on said date the Chancellor having made an order directing that a rule of this Court be issued directed to the stockholders of said company whose names appear on the list thereof attached to said petition to appear at a time in said order fixed, and show cause, if any they have, why the said assessment should not be made, and further directing that said rule and order with a copy of said petition, excluding the exhibits attached thereto, be served on those stockholders of said company who were residents of the state of Delaware and that

the Register in Chancery give to all other stockholders of said company whose names appear on said list notice of said petition and of the rule and order by sending a copy thereof to each of said stockholders by registered letter addressed to his last known residence, or place of business, and mailed within six days from the date of said order;

2.   "And due proof having been made before the Chancellor that service and notice of said rule and order had been made and given in compliance with said order;

3.   "And answers to said petition having been filed by Murray A. Cobb, Z. D. Blackistone, Albert L. Stavely, William H. Fenn and T. Coleman du Pont, whose names appear on said list as stockholders of said company, and no other stockholders of said company having appeared to said petition or rule, or filed any plea or answer thereto, or shown or averred any cause why the said assessment should not be made;

4.   "And the said petition and rule and the several answers thereto having come on to be heard by the Chancellor upon testimony presented and taken orally in open court before the Chancellor, and upon records and exhibits there produced, and the cause having been argued by the respective solicitors for said receivers and for said stockholders who had answered said petition, and the same having been duly considered and held under advisement until the date of this decree;

5.   "And it appearing to and being found by the Chancellor from the record, proceedings and evidence in said cause and upon said petition and answers thereto, that the proof so taken together with the record of said cause, constitute full and complete evidence and proof of all of the findings of fact and full support for all the findings of law and for the orders of the Court in this decree contained;

6.   "And further, that the said Arlington Hotel Company is a corporation of the State of Delaware, and has been duly adjudged by this court in this cause to be insolvent; and that the said James Frank Ball, Aulick Palmer and Peyton Gordon have been duly appointed by this court and qualified as receivers of said company;

7. "And further, that after due notice given to all of the creditors and stockholders of said company and after exceptions taken to certain claims filed in said cause by creditors of said company had been adjudicated, and the amount due the said creditors on their respective claims fixed and determined by the Chancellor as being the debts due by said company, the dividends allowed and decreed upon claims of said creditors in the suits in which receivers were appointed in the District of Columbia having been deducted from said claims, and that the following are the claims of creditors of the said company filed in this cause which have been so allowed by the Chancellor as the debts due by said company in the amounts hereinafter stated, viz:

[Here was inserted a list of the creditors of the company and the amounts due them respectively, aggregating $466,-739.42.]

8. "And further, that there are no funds or property of said corporation with which to pay the debts and claims, or any part thereof, except the moneys due to said corporation from the stockholders of the said corporation who have not paid in full for their shares of stock, and that an assessment or call should be made against said subscribers or holders of unpaid shares of stock of the said corporation to pay said debts and the expenses of the receivership;

9. "And further, that the debts of said company which are unpaid as aforesaid aggregate the sum of four hundred and sixty-six thousand seven hundred and thirty-nine dollars and forty-two cents ($466,739.42); that the interest to which creditors will be entitled will probably aggregate one hundred and forty thousand dollars ($140,000.00); that the costs and expenses of the receivership and of collecting the assessment, including compensation for the receivers and their legal counsel, are estimated at one hundred thousand dollars ($100,000.00); and that, therefore, the aggregate sum necessary to satisfy the debts of said corporation and to be assessed upon and collected from the stockholders who are liable therefor is seven hundred and six thousand seven hundred and thirty-nine dollars and forty-two cents ($706,739.42);

10. "And further, that the said creditors are entitled to have their said claims and demands against said company paid by an assessment to be made upon the shares of preferred and common stock of said company, and upon the holders thereof, notwithstanding that the said creditors, or some of them, had at the time of giving credit to said company notice of the circumstances under which the shares of common stock were issued by said company as full paid and non-assessable;

11. "And further, that the following is a list of the subscribers to the preferred stock of said company, who have not paid in full therefor, showing the number of shares subscribed for by them respectively, the aggregate of the payments made by any of them respectively, and the amounts unpaid thereon respectively (the name of J. William Henry, a subscriber for fifty [50] shares, found to be a bankrupt, being omitted therefrom), and the aggregate of the amounts so stated as unpaid on said 5,802 shares of preferred stock being four hundred and seventy-nine thousand two hundred and ten dollars ($479,-210.00):

[Here was inserted "Schedule A," showing the subscribers to preferred stock, number of shares, amount subscribed, amount paid and balance due.]

12. "And further, that all of the authorized common stock of said company, aggregating, three million dollars ($3,-000,000.00) had been issued without value given therefor, and that the amount remaining unpaid upon the common stock of said corporation is three million dollars ($3,000,000.00), and that the persons liable to assessment as holders of such common stock, including those holding trust certificates for shares of said common stock, and the amounts, aggregating three million dollars ($3,000,000.00), necessary to complete the amount of the par value of their shares and on which they are liable to assessment, are respectively, as follows:

[Here was inserted "Schedule B," showing the subscribers to common stock, number of shares, amount subscribed and amount due.]

13. "And further, that an assessment of twenty per cent. (20%) upon all holders of shares of stock of said company, both

preferred and common, not paid for in full, being 5,802 shares of preferred and 30,000 shares of common stock, aggregating 35,802 shares, would equal about the said sum of seven hundred and six thousand seven hundred and thirty-nine dollars and forty-two cents ($706,739.42), estimated to be necessary for the payment of the debts of said company, with interest and the expenses of the receivership; that two of said persons named in Schedule A have paid more than twenty per cent. of their subscriptions to said stock, viz: John F. Wilkins, a subscriber for two hundred and fifty shares, and John Auen, Jr., a subscriber for one thousand shares; and that therefore the said John F. Wilkins and John Auen, Jr., should not at this time be required to make further payments on account of their respective subscriptions to said preferred stock; that after deducting the shares of the said John F. Wilkins and John Auen, Jr., aggregating twelve hundred and fifty, the aggregate of said shares held by the subscribers mentioned in Schedule A is four thousand five hundred and fifty-two (4,552), and the aggregate of the shares of common stock is thirty thousand (30,-000) shares; and that the aggregate of both kinds of said stock liable for said assessment for payment of said debts and receivership expenses is thirty-four thousand five hundred and fifty-two (34,552) shares;

14.  "And further, that said assessment should be equalized as near as may be between those stockholders who have paid in part for their shares and to the the extent thereof, and those who have paid nothing therefor; and for this purpose that an assessment of twenty dollars and fifty-two cents ($20.52) should be made on each of said thirty-four thousand five hundred and fifty-two shares; and those persons named in Schedule A who have made payments on account of their shares be credited with the amounts so paid by them, as against the amount which would otherwise be assessed against them as above stated;

15.  "And further, that the following, Schedule C, is a list of the persons who as holders of shares of stock of said company, both preferred and common, are liable to said assessment; that the said schedule showns the number of shares held

by them respectively, as shown by the books, records and papers of said company and by the testimony in this cause; and the amount due and payable from each of them by an assessment of twenty dollars and fifty-two cents ($20.52) upon each share of stock held by them respectively, a deduction or credit having been given to such stockholders who have made payments on their stock of the amounts so paid by them respectively, as shown by the above mentioned Schedule A:

[Here was inserted "Schedule C," showing the subscribers to preferred and common stock, number of shares of each, and amount of assessment.]

"It is, therefore, adjudged, ordered and decreed by the court, as follows:

16. "That the amount necessary to be raised to pay the principal of the claims of the creditors of the said Arlington Hotel Company found and allowed as aforesaid is four hundred and sixty-six thousand seven hundred and thirty-nine dollars and forty-two cents ($466,739.42), and the estimated interest thereon to the date of payment is the sum of one hundred and forty thousand dollars ($140,000.00), and the estimated costs and expenses of the receivership, including the collection of the assessments hereinafter levied for the payment of said claims, amount to the sum of one hundred thousand dollars ($100,-000.00), and the total amount necessary to satisfy the debts of the said corporation and said costs and expenses is the sum of seven hundred and six thousand seven hundred and thirty-nine dollars and forty-two cents ($706,739.42);

17. "And further, that it is necessary to assess the said last mentioned sum upon the shares of stock of said company which have not been paid for in full, and upon the holders thereof, or upon the legal representatives of such of them as may be dead; that for said purpose the said sum is hereby assessed and levied upon said shares of stock and upon the holders thereof, or the legal representatives of such of them as may be dead; that for the said purpose an assessment of twenty dollars and fifty-two cents ($20.52) is hereby levied on each of said shares of stock, preferred and common, except the shares of preferred stock held by John F. Wilkins and John Auen, Jr.,

as hereinabove stated; that the holders of shares of preferred stock who have made payments on account thereof be credited as against said assessment with the amounts so paid thereon respectively as shown by Schedule A.

18. "And further, that the foregoing list, called Schedule C, contains the names of the holders of said shares, preferred and common, the number of shares held by them respectively, and the amounts so assessed against them as aforesaid, the holders of shares of preferred stock who have made payments on account thereof having been duly credited therewith as against said assessment;

19. "And further, that the said persons mentioned in said Schedule C, or the legal representatives of such of them as may be dead, pay to said receivers the said sums so assessed as stated in said Schedule C, within the time to be fixed herein;

20. "Provided, that with the consent of the receivers, or their solicitors, each and every stockholder liable under said assessment and levy who shall pay the amount assessed against him or them upon demand, or within the limit of time as hereinafter prescribed, shall be allowed a credit on the amount due as aforesaid of three per cent. (3%) upon his proportion of the amount so assessed and paid, which credit it is estimated would equal the proportionate share payable by each stockholder of the total amount of the estimated costs and expenses of the receivership, and the collection of the assessment, including compensation for the receivers and their legal counsel, and also for accruing interest.

21. "And further, that the said receivers be and they are hereby authorized and directed to send within ten (10) days from the date of this decree by registered postpaid letter, addressed to each of the holders of shares of stock of said company as shown in said Schedule C, or to their legal representatives, a copy of this decree, with a demand for the payment on or before the seventeenth day of September, A. D. 1917, of the amounts severally due from them as shown by said Schedule C.

22. "And further, that in the event that any person or corporation liable as shareholders of the company, or the legal representative of any of them that may be dead, shall fail to

pay the amount hereby assessed upon or against the share or shares of said stock, preferred or common, owned or held by him, or upon or on account of which he is liable, within the time hereinbefore specified, said receivers are hereby authorized and empowered to institute and prosecute such suit or suits, action or actions, or other proceedings against such person or persons, corporation or corporations, party or parties so liable, in any court having jurisdiction, whether in this State or elsewhere, as said receivers shall deem necessary or proper for the collection of the whole amount due from such persons or corporations, under the terms of this decree; and for the purpose of carrying on said suits, the receivers are hereby authorized and directed to employ such counsel in other jurisdictions and make such expenditures for costs in any of said courts as may reasonably be found to be necessary.

23. "And further, that the title to said sums severally assessed as aforesaid against said shares of stock and against said stockholders, or their legal representatives, and the right to sue therefor, is in the said receivers of said company.

"And it appearing to and being found by the Court that T. Coleman du Pont is the only stockholder of said company resident in the State of Delaware.

24. "It is further adjudged, ordered and decreed that in the event that at the end of the period of time hereinbefore specified, the whole or any part of the said sum of seven hundred and six thousand seven hundred and thirty-nine dollars and forty-two cents ($706,739.42), remains unpaid by reason of the failure of any person or corporation liable as shareholder of the Arlington Hotel Company to pay within said specified time the amount hereby assessed upon or against the share or shares of said stock, preferred or common, owned or held by him, or upon or on account of which he is liable, said receivers are hereby authorized, empowered and directed to give to the said T. Coleman du Pont written notice of that fact, and of the amount so remaining unpaid, and to demand and require the said T. Coleman du Pont to pay to said receivers in addition to the amount hereinbefore assessed against him on account of the shares held by him, the balance of the total sum of seven

hundred and six thousand seven hundred and thirty-nine dollars and forty-two cents ($706,739.42), or so much thereof as then remains unpaid by reason of such failure on the part of said other stockholders, which said sum of seven hundred and six thousand seven hundred and thirty-nine dollars and forty-two cents ($706,739.42), or so much thereof as shall then remain unpaid, the said T. Coleman du Pont is hereby ordered and decreed to pay to the said receivers; and in default thereof for the period of thirty (30) days, the said receivers shall proceed to collect the same from the said T. Coleman du Pont by suit, or otherwise, as they may deem proper.

25. "And further, that the said T. Coleman du Pont, upon payment of the said sum so remaining unpaid, shall (except as to the amount assessed against him) be subrogated to the rights of the said receivers, to have and recover, by way of contribution, from the persons or corporations liable for or on account of said shares of preferred and common stock, the sums respectively assessed upon and due from each of them under the assessment  hereinbefore made and levied; and shall also have the right to institute and prosecute at his own expense, in the name of said receivers, but to his own use, any suit, action or proceeding for the recovery or collection of said sums so assessed as aforesaid, including any suit, action or proceedings brought by said receivers for said purpose, and shall be entitled to have any order of this Court necessary to effectuate such purpose; and all sums, if any, that may subsequent to such payment by said T. Coleman du Pont, be received by said receivers from any such person or corporation, for or on account of such liability, shall be held subject to the further order of the Court, and for the use of said T. Coleman du Pont.

26. "And it is further adjudged, ordered and decreed, that said receivers be and they are hereby directed to hold all amounts collected under the terms of this decree subject to the further order of the Chancellor herein.

[Signed]  CHAS. M. CURTIS, *Chancellor.*"

Note.  From this decree an appeal was taken by five of the stockholders, and the principles of law as stated by the Chancellor were affirmed by the Supreme Court, but the decree of the Chancellor was modified respecting the estimated amounts of costs, allowances to the receivers and their solicitors and interest.  See *post p.* 430.